## PEOPLE v FIKE

Docket No. 199564. Submitted January 7, 1998, at Lansing. Decided February 20, 1998, at 9:20 A.M. Leave to appeal sought.

John J. Fike was convicted by a jury in the Shiawassee Circuit Court, Gerald D. Lostracco, J., of first-degree criminal sexual conduct and was sentenced to ten to thirty years' imprisonment. He appealed.

The Court of Appeals *held*:

1. The defendant's unpreserved argument that he received ineffective assistance of counsel as a result of his counsel's failure to file a motion to suppress his confession is unavailing. The defendant did not overcome the presumption that his counsel was effective. The defendant failed to show that his counsel's actions were not trial strategy or that counsel's actions detrimentally affected the outcome of the trial.

2. The record does not support the defendant's contention that his statements to the police were not voluntary or that he did not intelligently and knowingly waive his rights. Although the defendant may have a less-than-average intelligence level, there is no evidence that he did not understand his right to remain silent, his right to obtain an attorney, or that his statements may be used against him at trial. The police did not take advantage of the defendant's intelligence level or subject him to coercion or improper conduct. The record does not suggest that the statements were the result of the defendant's confusion or mental deficiency. The confession was properly admitted and defendant's counsel cannot be faulted for failing to raise a futile objection or motion.

3. The Due Process Clause of the Michigan Constitution, Const 1963, art 1, § 17, does not require the audio or visual recording of custodial interrogations. The failure of the police to electronically record the defendant's confession was not so fundamentally unfair that the concept of justice was offended.

Affirmed.

FITZGERALD, P.J., dissenting in part, would remand for a *Walker* hearing, *People v Walker (On Rehearing)*, 374 Mich 331 (1965), and a *Ginther* hearing, *People v Ginther*, 390 Mich 436 (1973), because there is some record support for the defendant's contention that his confession was coerced and the record is inadequate to permit a

thorough review of the claim. Although the failure to make an audio or visual recording of the interview did not violate the defendant's rights under the Due Process Clause of the Michigan Constitution, the electronic recording of prestatement conversation and custodial interrogations, where feasible, and where made in a place of detention, is a reasonable and necessary safeguard of the defendant's rights and the Legislature should promulgate a statute mandating such recording.

1. CRIMINAL LAW — CONFESSIONS — MENTAL DEFICIENCIES.

A deficiency in a defendant, such as having a less-than-average intelligence level, that is not exploited by the police does not annul the voluntariness of the defendant's confession where there is no evidence of police coercion, improper police conduct, or that the confession was the result of the defendant's confusion or mental deficiency.

2. CONSTITUTIONAL LAW — DUE PROCESS — RECORDING OF CONFESSIONS.

The Due Process Clause of the Michigan Constitution does not require the electronic recording of all custodial interrogations or confessions, including the giving of the accused's rights under *Miranda v Arizona*, 384 US 436 (1966), that occur in a place of detention where recording is feasible (Const 1963, art 1, § 17).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Randy Colbry*, Prosecuting Attorney, and *Michael E. Moody*, Assistant Attorney General, for the people.

State Appellate Defender (by *Randy E. Davidson* and *Pamella R. Szydlak*), for the defendant on appeal.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

O'CONNELL, J. Defendant appeals as of right from his conviction by a jury of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). Defendant was sentenced to a term of ten to thirty years' imprisonment. We affirm.

Defendant's conviction stems from the August 24, 1995, rape of a fourteen-year-old girl on the garage floor at her house. As a result of the incident, the complainant suffered severe vaginal laceration and loss of blood. Several weeks after the incident, the complainant told Detective Keith Kewish that she had been sexually assaulted by defendant. On September 11, 1995, Kewish contacted defendant and confronted him with the allegations raised by the victim. Defendant denied having any contact with the complainant on the day in question.

On September 29, 1995, defendant voluntarily agreed to participate in an interview at the state police headquarters in Lansing. He was taken into an interview room that was being monitored by closed-circuit television, advised of his constitutional rights, and, upon waiving his rights and agreeing to speak, was then questioned for approximately 2½ to 3 hours. During the interview, defendant admitted having sexual intercourse with the complainant, but claimed that it was consensual. The entire interview was observed by Detective Kewish; Kewish thereafter conducted his own audiotaped interview with defendant. In the second interview, defendant was again advised of his constitutional rights and, after agreeing to speak, told Kewish that he had consensual sexual intercourse with the victim. Defendant was arrested and later convicted of first-degree criminal sexual conduct.

I

Defendant first argues that he was denied a fair trial because his trial counsel was ineffective in failing to file a motion to suppress his confession to the

police. According to defendant, trial counsel was aware of his low intelligence level, his inability to read and write, and his tendency to be easily confused. Defendant now contends that such circumstances, coupled with the fact that he was questioned for nearly three hours in a small interrogation room, would likely have led the trial court to rule that the evidence was inadmissible. We disagree.

To properly preserve this issue defendant would have had to object to his counsel's performance in the court below and establish a record of facts pertaining to such allegations. He did neither and therefore failed to preserve the issue. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Accordingly, in determining whether defendant has overcome the presumption that counsel was effective, our review is limited to the facts apparent in the lower court record. *People v Sharbnow*, 174 Mich App 94, 106; 435 NW2d 772 (1989). After reviewing the record, we find that defendant has failed to overcome that presumption because he has not shown that his trial counsel acted in a manner that cannot reasonably be attributed to trial strategy or that counsel's actions detrimentally affected the outcome of his trial. *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987).

In determining whether defendant's confession was knowing, voluntary, and intelligent, we apply an objective standard and examine the totality of the circumstances. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). Such circumstances may include the age, education, intelligence level, and experience of the defendant, the duration of the defendant's detention and questioning, the defendant's

mental and physical state, and whether the defendant was threatened or abused. *Id.* No single factor is determinative, and in order to establish a valid waiver of the right to remain silent, the prosecution need only prove that the defendant was aware of his available options. *People v Cheatham*, 453 Mich 1, 28, 36; 551 NW2d 355 (1996).

In the present case, the record does not support defendant's contention that his statements were not voluntary or that he did not intelligently and knowingly waive his rights. Although defendant may have a less-than-average intelligence level, there is no evidence that he did not understand his right to remain silent, his right to obtain an attorney, or the fact that his statements may be used against him at trial. As the United States Supreme Court has held, a deficiency in the defendant that is not exploited by the police cannot annul the voluntariness of a confession unless there is evidence of police coercion. *Colorado v Connelly*, 479 US 157, 164-165; 107 S Ct 515; 93 L Ed 2d 473 (1986). See also *Cheatham, supra* at 15-17. Additionally, we find some guidance in the fact that defendant was twice read his rights, that he indicated that he understood them, and that he agreed to speak with the police.

The record does not suggest that the police took advantage of defendant's intelligence level, that he was in any way subjected to coercion or improper police conduct, or that defendant's statements were the result of confusion or mental deficiency. Accordingly, we believe that his confession was properly admitted at trial, and trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile. See *People v Tullie*, 141 Mich App

156, 158; 366 NW2d 224 (1985). In any case, our review of the record indicates that trial counsel's actions might well have been a matter of trial strategy, an area in which this Court will not substitute its judgment for that of counsel. *Barnett, supra.*

II

Defendant next argues that he is entitled to a new trial because the police failed to make an audio or visual recording of his interview. To support his contention that the trial court sua sponte should have suppressed his confession, defendant cites an Alaska case, *Stephan v State*, 711 P2d 1156 (Alas, 1985), wherein the Alaska Supreme Court held that in order to be admissible under the Due Process Clause of the Alaska Constitution, all custodial confessions (including the giving of the accused's *Miranda*[1] rights) must be electronically recorded when the interrogation takes place in a place of detention and where recording is feasible. *Id.* at 1159-1160. In this case of first impression, defendant now urges this Court to extend Michigan's constitutional due process guarantees by adopting the same rule. We decline, however, to "fiat" our views of police practice into a constitutional mandate when the Michigan Legislature has not yet spoken on the subject.

In *Stephan*, the Alaska Supreme Court opined that electronic recordings of custodial interrogations, while not required by the United States Constitution,[2]

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] The court noted that "a recording does not meet the standard of constitutional materiality recently enunciated by the United States Supreme Court in *California v Trombetta*, 467 US 479, 104 S Ct 2528, 81 L Ed 2d 413 (1984)." [*Stephan, supra* at 1160.]

would better protect an accused's rights by abrogating the credibility contest between the police and the accused and providing an objective means for evaluating the interrogation. *Id.* at 1158, 1160-1161. The court thus held that, under the Alaska Constitution "an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process . . . and that any statement thus obtained is generally inadmissible." *Id.* at 1158. The court also noted, however, that "every rule must have its exceptions," and that exclusion of a defendant's statements would be "wholly unreasonable" in certain circumstances. *Id.* at 1165. For example, the court suggested that there is no reason to exclude a defendant's statements if no testimony is presented that the statement is inaccurate or was obtained improperly. *Id.*

First, we do not believe that the Due Process Clause of our state constitution requires such a practice. Const 1963, art 1, § 17 provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." The Due Process Clause is violated when there is a " 'failure to observe that fundamental fairness essential to the very concept of justice.' " *Dodge v Detroit Trust Co,* 300 Mich 575, 618; 2 NW2d 509 (1942) (citation omitted). This concept of "fundamental fairness," however, is limited to those rights found in the United States and Michigan Constitutions. In *Sitz v Dep't of State Police,* 443 Mich 744, 759; 506 NW2d 209 (1993), our Supreme Court explained that "[t]he judiciary of this state is not free to simply engraft . . . more 'enlightened' rights than the framers intended," but by the same token, "may not disregard the guarantees that our constitution

confers on Michigan citizens merely because the United States Supreme Court has withdrawn or not extended such protection." The Court specifically noted that "the courts of this state should reject unprincipled creation of state constitutional rights that exceed their federal counterparts." *Id.* at 763. In the absence of a legislative mandate, this Court finds that an extension of the rule set forth in *Stephan, supra,* represents just such an "unprincipled creation of state constitutional rights . . . ." *Id.*

Second, we note that the rule set forth in *Stephan* is a minority view that has not been generally accepted. Although some state legislatures have adopted statutes requiring that custodial interrogations be recorded, the majority of state courts that have considered this issue have specifically rejected the conclusion reached by the Alaska Supreme Court. See, e.g., *People v Raibon,* 843 P2d 46, 49 (Colo App, 1992); *State v James,* 237 Conn 390, 430-432; 678 A2d 1338 (1996); *Coleman v State,* 189 Ga App 366, 367; 375 SE2d 663 (1988); *State v Kekona,* 77 Hawaii 403, 408-409; 886 P2d 740 (1994); *State v Rhoades,* 121 Idaho 63, 73; 822 P2d 960 (1991); *People v Everette,* 187 Ill App 3d 1063, 1074-1076; 543 NE2d 1040 (1989); *Commonwealth v Diaz,* 422 Mass 269, 272-274; 661 NE2d 1326 (1996); *State v Buzzell,* 617 A2d 1016, 1018 (Me, 1992); *Williams v State,* 522 So 2d 201, 208 (Miss, 1988); *Jimenez v State,* 105 Nev 337, 339-341; 775 P2d 694 (1989), rev'd on other grounds 112 Nev 610; 918 P2d 687 (1996); *State v James,* 858 P2d 1012, 1017-1018 (Utah App, 1993); *State v Gorton,* 149 Vt 602, 604-606; 548 A2d 419 (1988); *State v Spurgeon,* 63 Wash App 503, 505; 820 P2d 960 (1991); *State v Kilmer,* 190 W Va 617, 629; 439 SE2d 881 (1993); *Gale*

*v State*, 792 P2d 570, 588 (Wy, 1990). Several of these courts have concluded that such a requirement may not properly be mandated in the absence of state legislation supplementing the rights set forth in the state constitution. See, e.g., *Gorton, supra* at 606; *Raibon, supra* at 49. But see *Smith v State*, 548 So 2d 673 (Fla App, 1987) (holding that the Due Process Clause of the Florida Constitution requires a recording of custodial interviews).

In the present case, we cannot say that the failure of the police to electronically record defendant's confession was so "fundamentally unfair" that the concept of justice was offended. In this regard, we note that defendant does not claim that he was threatened or coerced or that he did not, in fact, waive his constitutional rights. In fact, we are hard pressed to see how a recording of defendant's confession might have benefited the defense. Accordingly, because no claim of material misconduct has been presented, we find that the trial court did not commit error requiring reversal in admitting defendant's confession without a recording of that statement.[3]

Affirmed.

Whitbeck, J., concurred.

Fitzgerald, P.J. (*concurring in part and dissenting in part*).

---

[3] In passing, we note that this conclusion is consistent with the Alaska court's holding in *Stephan, supra* at 1165, where the court found that there is no reason to exclude a defendant's statements, even if unrecorded, if no claim of material misconduct has been presented.

I

The majority concludes that the record does not support defendant's contention that his statements were not voluntary or that he did not intelligently and knowingly waive his rights. As a result of this conclusion, the majority holds that a motion to suppress would have been futile and that counsel was therefore not ineffective in failing to move to suppress defendant's statement.[1] I disagree. Indeed, the lack of record support for defendant's argument that his confession was coerced is attributable to the fact that defense counsel failed to move for a *Walker*[2] hearing regarding the voluntariness of defendant's confession. Given defense counsel's acknowledgment at sentencing that defendant has a less-than-average intelligence level, is easily confused, and is unable to read or write, together with the fact that defendant was subjected to a nearly three-hour interview after he initially denied any involvement in this incident, see *People v DeLisle*, 183 Mich App 713, 719, 721; 455 NW2d 401 (1990) (the length of the defendant's interview strongly suggested that his statement was not voluntarily made), I can discern no trial strategy that would have prevented trial counsel from moving to suppress defendant's confession. Because some record support exists for defendant's contention, and because the record is inadequate to permit thorough review of defendant's claim, I would remand for a *Walker* hearing and a *Ginther*[3] hearing. MCR 7.216(A)(7).

---

[1] Defendant's motion to remand for an evidentiary hearing was denied by this Court.

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

II

I agree with the majority that the failure of the police to make an audio or visual recording of defendant's interview did not violate defendant's rights under the Due Process Clause of the Michigan Constitution. I write separately, however, to urge the Legislature to promulgate a statute mandating the electronic recording of prestatement conversation and actual interrogation and, unless and until that time, I urge law enforcement officers to make such recordings voluntarily.

The failure of law enforcement officers to record and preserve an accused's statements frequently results in the loss of essential parts thereof. See *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Even a few hours after hearing a conversation, it is difficult for a person to present precise and accurate testimony about those recent statements. Therefore, testimony in court weeks or months after confessions and statements are made is inevitably incomplete and at least partially inaccurate. This inevitable fallibility of human memory can be rectified by a contemporaneous recording of the confession and related interrogation.

In *Stephan v State*, 711 P2d 1156 (Alas, 1985), the Alaska Supreme Court stated that a recording requirement provides a more accurate record of a defendant's prestatement conversation and interrogation and makes it possible for a defendant to challenge misleading or false testimony and, at the same time, minimizes the subsequent assertion of questionable claims of denial of constitutional rights as well as claims of unknowing or involuntary waiver of such rights. *Id.* at 1160-1162. Further, recordation of all prestatement

conversations and interrogations will afford a review-
ing court an objective record on which to rule. Thus,
the court held that recording "is now a reasonable
and necessary safeguard, essential to the adequate
protection of the accused's right to counsel, his right
against self incrimination and, ultimately, his right to
a fair trial."[4] *Id.* at 1159-1160. A recording requirement
also discourages unfair and psychologically coercive
police tactics and thus results in more professional
law enforcement.[5]

The technology presently exists to record readily
and accurately by both video and sound tapes the
statements of witnesses and accuseds. Indeed, when
it is to the advantage of law enforcement officers to
record the actions or statements of accuseds and wit-
nesses, this is often done. See *Stephan, supra.* The
courts are therefore presented with a situation in
which the police, with only a minimal expenditure of
effort and money, have the technical capability to pre-
serve vital testimony to assure that the accused's
rights have been observed and to validate the integ-
rity of the actual interrogation.

Others have recognized the protections that a
recording requirement would provide. See, e.g., *Hen-
dricks v Swenson*, 456 F2d 503 (CA 8, 1972) (sug-
gesting that videotapes of interrogations protected
the defendant's rights and are a step forward in the

---

[4] The *Stephan* analysis is relevant despite the fact that the Alaska
Supreme Court concluded that recording is a requirement of state due
process. *Id.* at 1159-1160.

[5] In this regard, I note that defendant was interviewed by Sgt. John J.
Palmatier of the Michigan State Police. In *DeLisle, supra,* this Court held
that defendant DeLisle's statement, which was made during a nearly 3½-
hour interrogation by Sgt. Palmatier, was inadmissible because it was,
among other things, the product of coercive police activity.

search for truth); *Ragan v State*, 642 SW2d 489 (Tex
Crim App, 1982); Tex Crim Proc Code Ann, art 38.22,
§ 3 (Vernon, 1979) (requiring that oral statements of
the accused must be recorded in order to be admissi-
ble). Commentators have advocated a recording
requirement. See, generally, Kamisar, *Foreword:
Brewer v Williams—A hard look at a discomfiting
record*, 66 Geo L J 209 (1977). The Uniform Rules of
Criminal Procedure, R 243, p 57 (1974), provides that
information about rights, any waiver thereof, and all
questioning shall be recorded where feasible, and
must be recorded when the questioning occurs at a
place of detention. The Model Code of Pre-
Arraignment Procedure of the American Law Insti-
tute, § 130.4(3) (1975), also contains a recording
requirement.

The court system is entitled to receive the best evi-
dence available in order to resolve the serious crimi-
nal matters that come before it. A logical conse-
quence of this principle is the need for the consistent
systematic recording of all interviews of a detained
accused conducted by law enforcement officials.
Thus, I am persuaded that the electronic recording of
prestatement conversation and custodial interroga-
tions, where feasible, and where made in a place of
detention, is now a reasonable and necessary safe-
guard, essential to the adequate protection of the
accused's right to counsel, his right against self-
incrimination, and his right to a fair trial.