Joseph SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CM–1519.

District of Columbia Court of Appeals.

Argued Feb. 15, 2008.

Decided May 1, 2008.

R. Michael Labelle, for appellant.

Mary Chris Dobbie (a member of the Texas Bar), Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, and B. Patrick Costello, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and BLACKBURNE–RIGSBY, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant appeals from his conviction for assault,[1] arguing that the trial court erred: (1) by admitting into evidence portions of the complainant's 911 call that are testimonial hearsay under the Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); and (2) by admitting into evidence the tape recording of the complainant's 911

---

1. A related charge, unlawful entry, in violation of D.C.Code § 22–3302 (2001), was dismissed prior to trial.

call in violation of the District of Columbia's marital privilege statute. We affirm.

## I.

Shortly after nine o'clock one morning, the complaining witness, the estranged wife of appellant, called the emergency telephone police operator on 911 to report that she had just been physically attacked by her husband. As is customary, the call was recorded on tape. When first connected to the 911 operator, complainant appeared to be extremely excited and anxious. She immediately pleaded for help and attention. When asked for her location, complainant responded that her husband, a resident of a halfway house, had broken into her house and attacked her. When the operator inquired further, she described her husband as a black male wearing a red shirt and a pair of blue shorts with a red stripe. Complainant repeated that appellant had been released from prison to a halfway house and had assaulted her. When asked her husband's name, she responded, "Joseph Smith." The operator asked the complainant if she was injured and if she needed an ambulance, and following affirmative responses to both questions, connected her with an ambulance dispatcher.

The ambulance dispatcher asked for the location of the emergency, and complainant stated her address. When asked the nature of her emergency, she stated that her husband, who was just out of jail, broke into her house. Complainant told the ambulance dispatcher her age and that she was hurt, but was unsure whether she was bleeding. The dispatcher asked the complainant where she was hit by her husband, and she stated that "he choked me, he tried to strangle me." The ambulance dispatcher confirmed her location and assured her that an ambulance was en route. She was then reconnected to the police operator.

The operator asked complainant if she knew her husband's present location, and she replied that he had either run out of the house, or was still in the basement, and that he had broken in through the basement window. When asked if her husband was possibly still inside the house, she answered affirmatively. The operator confirmed complainant's name and telephone number, and told her to remain on the line, assuring her that the next available unit would respond. Complainant pleaded with the operator to hurry in sending a response unit and said that she would remain on the line. At this point, complainant began speaking to a third person, "Andre." In response to a question about whether she was still married to her assailant, complainant reiterated that appellant had spent a year in jail and was in a halfway house for "doing this stuff to me." She also stated a friend was waiting with her; when asked if appellant possessed a weapon, she did not know. She added that appellant "stepped on top of me and started choking me and everything." Complainant then explained that she wanted Andre, an "old school friend" whom she saw walking past, to wait with her because she was scared. Responding to a question from the operator about her location, complainant confirmed that she was waiting in front of her house, and without prompting, told the operator that appellant was in Hope Village halfway house and provided the telephone number for that facility.[2]

As the trial date approached it was apparent to both sides that the complainant would likely not appear as a witness. In a pretrial hearing appellant, relying on *Crawford v. Washington,* supra, 541 U.S. at 36, 124 S.Ct. 1354, made a motion to exclude the recording, at least in part, of

2. The 911 tape was not transcribed. Portions of the recording are inaudible.

complainant's 911 telephone call from the evidence. After listening to the tape and consideration of the question, the trial judge denied the motion. At trial the officers who responded to complainant's residence testified regarding their observations of her and the broken basement window. Photographs of complainant, showing visible bruises and scratches, and of the broken window, were admitted into evidence.

## II.

■ Appellant's primary contention on appeal is that the introduction of the 911 recording, in its entirety, was testimonial evidence and denied the defense the right to confront and cross-examine his primary accuser. A number of cases have clarified the *Crawford* decision. Indeed the Supreme Court itself has issued opinions, *Davis v. Washington,* and *Hammon v. Indiana,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which address questions surrounding the admissibility of statements made to law enforcement officers in the context of incidents of domestic violence. Similarly, this court in *Lewis v. United States,* 938 A.2d 771 (D.C.2007), and *Long v. United States,* 940 A.2d 87 (D.C.2007), has also considered the question. Setting aside the question of the admissibility of excited utterances as an exception to the evidentiary rule against hearsay statements, the different inquiry under the Sixth Amendment is whether the questions asked by the dispatchers and statements made by the complainant in this case were primarily motivated by the urgency of seeking assistance in an ongoing emergency, so that they are not, under *Davis,* testimonial statements subject to the Confrontation Clause. Thus the Court in *Davis* stated:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the

interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when such circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822, 126 S.Ct. 2266.

■ Turning to the present case, the trial judge found, and we agree, that hearsay statements about the forcible entry and physical attack upon complainant shortly before her call for help came well within the scope of nontestimonial circumstances because they objectively indicate that their main purpose was to summon help for an ongoing emergency. In essence appellant argues that, unlike the *Lewis* case where the assaultive spouse was still on the scene when the police arrived, in this case there was no existing imminent threat to the complainant and thus the emergency had ended. This view of the case is unduly restrictive. Indeed to make the actual physical presence of the alleged wrongdoer a dominant factor in determining whether there is an ongoing emergency, narrows and distorts the guiding principle to be applied to a wide range of circumstances. In the circumstances here, it is undisputed that when complainant made the 911 call, she did not know appellant's location, could not know if the attack had ended, and feared he might return. Giving consideration to all of the circumstances, we conclude the trial judge did not err in admitting the early portions of the recording reflecting her request for police assistance and also her conversations with the ambulance dispatcher. We do not, and need not, decide whether the remainder of the recording is testimonial. If we assume that it is, we conclude that the admission of such evidence would be harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 24, 87

S.Ct. 824, 17 L.Ed.2d 705 (1967), as the essential elements of the offense and the identity of appellant as her assailant had already been disclosed during the first moments of the call when the nontestimonial statements were made. *See Morten v. United States,* 856 A.2d 595, 600 (D.C. 2004).

## III.

◼ Appellant's other argument is that the trial court erred by admitting into evidence the recording of the 911 tape because under the District of Columbia's marital privilege statute, his spouse could not be compelled to testify against him.[3]

◼ Under D.C.Code § 14–306(a) (2001), a witness may testify against his or her spouse in a criminal proceeding but cannot be compelled to do so. To give effect to the statute, " 'outside the presence of the jury, the trial judge should tell one who is called to testify for or against his spouse that his testimony cannot be compelled but may be received if volunteered.' " *Bowler v. United States,* 480 A.2d 678, 685 (D.C.1984) (quoting *Postom v. United States,* 116 U.S.App. D.C. 219, 221, 322 F.2d 432, 434 (1963)). The spousal testimony privilege "belongs only to the *witness* spouse." *Bowler, supra,* 480 A.2d at 685 (emphasis in original). It cannot be invoked by "the defendant who wishes to keep his or her spouse off the witness stand." *Riley v. United States,* 923 A.2d 868, 887 n. 23 (D.C.2007). In this jurisdiction, it is a "settled rule" that "a defendant ordinarily does not have standing to complain of an erroneous ruling on a witness's claim of privilege." *Keys v. United States,* 767 A.2d 255, 259 (D.C.2001). There is an exception to this rule and a defendant has

standing to challenge an erroneous ruling on another witness's privilege claim when he is adversely affected by the ruling but only when the court "in rendering its ruling, exceeded its authority and usurped 'a prerogative that Congress has withheld from the courts.' " *Id.* at 260 (quoting *Ellis v. United States,* 135 U.S.App.D.C. 35, 41, 416 F.2d 791, 798 (1969)).

◼ Appellant had several options to make his marital testimony privilege argument before the trial court. His trial counsel could have subpoenaed complainant as a witness to have her invoke her testimonial privilege before the court or he could have requested other assistance from the trial judge. He pursued neither course of action. Because appellant failed to make this argument below, "we review for plain error." *Thomas v. District of Columbia,* 942 A.2d 645, 650 (D.C.2008). Plain error review requires that we affirm appellant's conviction unless he demonstrates that " 'there was (1) error, (2) that [was] plain, (3) that affect[ed] substantial rights, and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings.' " *Id.* (quoting *Peay v. United States,* 924 A.2d 1023, 1028–29 (D.C.2007)). Appellant has failed to establish that he has standing to claim a violation of complainant's marital testimony privilege, and thus he has not demonstrated that the trial court committed error. His argument cannot withstand plain error review.[4] Accordingly, the judgment of conviction is

*Affirmed.*

◼

---

3. Appellant did not raise the issue in the trial court whether the recording constituted "testimony" for purposes of the marital privilege and we do not decide that question.

4. Because our review in this case was under the plain error standard, we do not reach nor decide whether the admission of the tape as evidence in this case was "testimonial" for purposes of the marital privilege statute. In-

deed the record reflects that the government did not compel the complainant to testify or take any other action in violation of the statutory provisions.