# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

FLOYD PHILLIP ALLEN,

          Defendant-Appellant.

FOR PUBLICATION
April 30, 2015
9:00 A.M.

No. 318560
Ionia Circuit Court
LC No. 2013-015693-FH

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted by a jury of failing to comply with the Sex Offender Registration Act (SORA), second offense, MCL 28.729(1)(b). Defendant was sentenced as a habitual offender, second offense, MCL 769.10, to 2 years' to 126 months imprisonment. Defendant appeals as of right. For the reasons set forth in this opinion, we affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

Following a conviction of fourth-degree criminal sexual conduct, defendant was required to register under SORA. On April 30, 2012, defendant registered with the address 6123 Clarksville Road. Pursuant to the requirements of SORA, defendant verified that address on January 9, 2013.

On March 17, 2013, Officer James Yeager received an anonymous tip that suggested defendant was not in compliance with SORA. Yeager testified that the tip stated that someone should investigate where defendant was living and the tip provided an address of 211 West Riverside. Yeager and his partner began investigating the anonymous tip. Yeager testified that the Clarksville Road address was a trailer home that appeared to be uninhabitable. The residence was unlit and appeared to be vacant or unoccupied. Yeager testified that there was snow on the ground, but he observed no tire tracks in the driveway or footprints leading up to the front porch or around the back of the trailer. Additionally, part of the skirting was missing from the trailer, exposing pipes underneath. Yeager explained that it did not appear as if the trailer was heated because, with the freezing weather, the pipes could freeze up. Yeager testified that he and his partner established that nobody was at defendant's registered address on March 17, 2013.

-1-

Yeager and his partner returned to the Clarksville Road address three days later on March 20, 2013. Yeager testified that, as they approached the residence, he observed that his tire tracks from March 17 were the only visible tire tracks. He additionally observed that there were no footprints in the snow leading up to the residence. Yeager testified, again, that it was obvious no one was at the residence.

On March 26, 2013, Yeager returned a third time to defendant's Clarksville Road address. He testified that he walked around the residence and observed only his and his partner's footprints from their previous visits. Likewise, he observed no new tire tracks and once more concluded no one was at the residence.

After his third visit to 6123 Clarksville Road, Yeager visited the address left in the anonymous tip, 211 West Riverside. He visited this address around 10:00 p.m. on March 26, 2013. Yeager testified that Lisa Allen, defendant's wife,[1] answered the door when he knocked. Yeager asked Lisa for defendant. After initially denying that defendant was present, Lisa went inside the residence and defendant appeared at the front door shortly thereafter. Yeager asked defendant where he had been staying. Defendant responded with the Clarksville Road address and indicated that he had stayed there the previous night. Yeager told defendant that he had been monitoring that residence for a period of time and knew defendant was not staying there. Defendant then explained that he worked on Parmeter Road for Michael Clark who ran a carnival-type operation. He stated that he stayed at the address 901 West Parmeter Road for a couple weeks. Defendant told Yeager that he stopped by Lisa's residence after he finished working on Parmeter Road that day, but he planned to get a ride to his address on Clarksville Road to spend the night there. Defendant admitted to Yeager that it had been a couple weeks since he had been to the Clarksville Road address, but he insisted it was inhabitable and heated. After this discussion, Yeager arrested defendant for failing to comply with SORA's registration requirements.

Yeager testified that after he arrested defendant, he attempted to locate 901 West Parmeter Road. Yeager could not locate 901, but he found 909 West Parmeter Road. At that address, Yeager came in contact with Lucinda Pilot. Pilot was familiar with defendant and was able to answer Yeager's questions regarding defendant's residency status. Pilot testified that, at the time she spoke to Yeager, defendant was not living with her or on the Parmeter Road property where he worked.

Pilot previously lived at 6123 Clarksville Road from May 2012 until October 12, 2012. Pilot testified that defendant was supposed to be living there as well. However, Pilot could only recall two nights from May 2012 to October 2012 that defendant slept there. Defendant slept there once in May 2012 when Pilot first moved into the trailer. The second time defendant slept there was on a night near the end of summer before his probation officer came out to see him. Regarding where defendant slept other nights, Pilot testified that, on one occasion, she dropped defendant off at Lisa's house at night and picked him up the next morning. She testified that,

---

[1] The trial court took judicial notice that "defendant's order of probation precluded him from having any verbal, written, electronic or physical contact with . . . Lisa Allen."

when she moved to Parmeter Road in October 2012, defendant was not living at Clarksville Road, and she did not know if he went back.

Before the prosecutor rested her case-in-chief, defendant indicated that he wanted to call Kathryn Perry as a defense witness. Initially, the trial court precluded Perry's testimony for two reasons: first, Perry sat in the courtroom during opening statements contrary to the trial court's sequestration order; and, second, defendant failed to notify the prosecutor of the witness before trial. In discussing Perry's testimony, the prosecutor asked the trial court for a compromise. The prosecutor suggested that if the trial court allowed Perry to testify, then she would call Lisa as a witness. Defense counsel initially objected, citing spousal privilege. Defense counsel stated,

> I don't know that she's been advised that she holds the spousal privilege and is in a position to waive it. She may have made an incriminating statement to Trooper Yeager at the time he came to her house . . . I would request that she be advised on her spousal privilege and also her Fifth Amendment protection.

The trial court responded, "I'm going to need some authority from you before I do that."

Following the prosecution's case-in-chief, defense counsel stated as follows:

> I'd like to resolve the witness issue. My office tells me that the wife has to claim but she can't if she's a victim. I don't believe she's a victim in this case so the wife would have to claim the privilege. Whether she waives it or not would be up to her. We would ask that you order the compromise. Ms. Kathryn Perry can testify during our presentation and Ms. – Mrs. Allen can testify on rebuttal.

The trial court accepted the parties' compromise and permitted Perry and Lisa to testify. The issues of spousal immunity and the Fifth Amendment were not revisited.

Perry testified that Lisa, defendant's wife, was her sister. Perry owned the trailer on 6123 Clarksville Road. She testified that she and defendant had an agreement that he was to make sure no one broke into the trailer. Defendant did not pay rent to live there. Perry testified that she visited once a month to check on the residence and make sure it was being maintained. Perry visited the trailer on March 15, 2013, for this purpose. Perry testified that she did not expect defendant to be there when she visited because "[m]ost of the time he wasn't there." On March 15, it did not appear to Perry that defendant had vacated the property. She testified that the temperature was normal; she and defendant agreed that he would turn down the heat to 55 degrees any time he left the trailer. Perry further testified that defendant did not have many personal belongings, but the belongings he did have were there when she visited.

After Perry's testimony, the prosecutor called Lisa as a rebuttal witness. Lisa testified that she lived at 211 West Riverside Drive. When Yeager came to her house in March 2013, defendant "was staying there. He wasn't living there." Lisa testified that defendant had been there for about six months. Defendant kept some clothes at her house and slept on a mattress on the living room floor. Lisa testified that defendant did not stay there every day; he was there approximately five days a week. Finally, Lisa testified that, for the previous six months, defendant spent more time at her address than at the trailer on Clarksville Road.

As previously noted, defendant was convicted of failure to comply with SORA, second offense. Defendant was sentenced as set forth above and he appeals his conviction and sentence as of right.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to file a witness list. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* However, because this issue is unpreserved, our review is limited to mistakes apparent in the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998).

For a claim of ineffective assistance of counsel, a defendant must first establish that counsel's representation was deficient on an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Second, a defendant "must show that the deficient performance prejudiced the defense" by establishing "the existence of a reasonable probability that but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001) (internal quotation marks omitted), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

Defense counsel's failure to file a witness list fell below an objective standard of reasonableness. The prosecutor made a request for discovery pursuant to MCR 6.201. Following the prosecutor's request, the trial court issued a pretrial order, signed by defense counsel, indicating that defendant was required to produce all names and addresses of witnesses he intended to call within 14 days of trial. Failure to follow the trial court's pretrial order cannot be considered sound trial strategy and such a failure clearly fell below an objective standard of reasonableness. *Toma*, 462 Mich at 302.

Although defense counsel's performance was deficient, defendant has failed to establish prejudice in this case. *Carbin*, 463 Mich at 600. The trial court permitted defendant to call Perry despite defense counsel's failure to provide a witness list. Defendant argues that he was prejudiced due to the parties' compromise. Specifically, he argues that the prosecutor would not have been permitted to call Lisa as a rebuttal witness had defense counsel filed a witness list. However, defendant cannot show that the trial court would have excluded Lisa's testimony had defense counsel properly filed a witness list and called Perry at trial. See MCL 767.40a(4) (allowing the prosecution to add witnesses to its list at any time upon leave of the trial court and a showing of good cause). The prosecutor indicated at trial that it could address the substance of Perry's testimony through Lisa. Thus, had defense counsel notified the prosecutor of his intent to call Perry, it is probable that the prosecutor would have sought to add Lisa to its witness list to address the substance of Perry's testimony either in its case-in-chief or on rebuttal.

Moreover, even without Lisa's testimony, the evidence against defendant was overwhelming and defendant cannot show that defense counsel's failure to file the witness list impacted the outcome of the proceeding. *Carbin*, 463 Mich at 600. The trial court instructed the jury that to sustain a guilty verdict in this case, the prosecution was required to prove beyond a reasonable doubt that; (1) defendant was required to register under SORA,[2] (2) that defendant either "changed or vacated his residence or intended to temporarily reside at any place other than his residence for more than seven days," and (3) that defendant "failed to report in person and notify the registering authority . . . of his new address within three business days after changing or vacating his residence or intending to temporarily reside at any place other than his residence for more than seven days." See MCL 28.725(1)(a), (e). The court also instructed the jury that, for purposes of SORA registration, "residence" is defined as,

> that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the greater part of the time shall be his or her official residence [] [See MCL 28.722(p).]

In this case, there was substantial evidence to support that defendant changed or vacated his registered residence or intended to reside at a place other than his residence for more than seven days and that he failed to appear in person to the registering authority to report his new address. Yeager testified that the trailer at defendant's registered address appeared uninhabitable between March 17, 2013, and March 26, 2013. On March 26, 2013, Yeager found defendant at Lisa's house. When confronted about his address, defendant told Yeager that he had been staying at Parmeter Road for the previous two weeks. Defendant admitted that it had been a couple weeks since he stayed at the Clarksville Road address, but he insisted it was habitable and heated. Thus, the jury heard incriminating statements from defendant that he was not staying at his registered address. Moreover, Pilot testified that when she resided at the trailer on Clarksville Road, defendant was also supposed to be living there. However, she testified that defendant only slept at the residence two times between May 2012 and October 2012. She further testified about at least one occasion where defendant stayed at Lisa's residence. Finally, Perry's testimony supported that defendant did not reside at the trailer. Although Perry testified that she saw defendant's few personal items at the trailer when she checked in on the residence, Perry explained that defendant was not at the trailer "most of the time" when she checked the residence. She explained that she and defendant had an agreement that he was to ensure that no one broke into the trailer. She testified that he did not pay rent to stay there. On this record, defendant cannot show there is a reasonable probability that, but for counsel's error, the outcome of the trial would have been different and his claim of ineffective assistance of counsel fails. *Carbin*, 463 Mich at 600.

---

[2] The parties stipulated that defendant was required to register under SORA.

Next, defendant argues that defense counsel was ineffective for failing to move the trial court for a *Walker*[3] hearing to determine the admissibility of statements he made to police. Defendant contends that his statements were involuntary because he was never advised of his *Miranda*[4] rights. When a defendant challenges his statements as involuntary, the trial court must hold a *Walker* hearing outside the presence of the jury to determine the issue of voluntariness. *People v Manning*, 243 Mich App 615, 624-625; 624 NW2d 746 (2000). A defendant must file a motion to suppress in advance of trial. *Id.* at 625.

In this case, defendant was not in custody when the police officer asked him questions about where he was staying. Defendant was questioned at his wife's house where a reasonable person in defendant's position would believe he was free to leave. See *People v Vaughn*, 291 Mich App 183, 189; 804 NW2d 764 (2010), aff'd in part, vacated in part on other grounds 491 Mich 642 (2012). "[N]oncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." *Beckwith v United States*, 425 US 341, 348; 96 S Ct 1612; 48 L Ed 2d 1 (1976) (quotation marks and citations omitted). In determining voluntariness, this Court applies an objective standard and examines the totality of the circumstances. *Fike*, 228 Mich App at 181. Factors used to determine voluntariness include "the age, education, intelligence level, and experience of the defendant, the duration of the defendant's detention and questioning, the defendant's mental and physical state, and whether the defendant was threatened or abused." *Id.* at 181-182.

The record indicates that, at the time Yeager questioned defendant at Lisa's residence, there were no special circumstances present that overbore defendant and compelled him to offer involuntary statements. *Beckwith*, 425 US at 348. As noted, defendant was not in custody at the time of the questioning and the record supports that the questioning was brief. Furthermore, defendant had experience with the police related to his prior conviction and registration under SORA. To the extent that defendant argues that his statements were involuntary because the police did not read him his *Miranda* rights, because there is no evidence to support that defendant's freedom was restricted in such a manner that rendered him "in custody" at the time of the questioning, Yeager was not obligated to provide defendant with *Miranda* warnings. See *People v Mendez*, 225 Mich App 381, 384; 571 NW2d 528 (1997) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'") In conclusion, there was no evidence to support that defendant was in "custody" at the time of the questioning or that he made involuntary statements to the police. Therefore, defense counsel was not ineffective for failing to request a *Walker* hearing. *Fike*, 228 Mich App at 182 ("trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.")

## B. ADMISSIBILITY OF EVIDENCE

---

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Next, defendant claims several errors with respect to Lisa's testimony on rebuttal. He contends that the trial court was obligated to inform Lisa of her spousal privilege and Fifth Amendment privilege. He also argues that the prosecutor intended to "sandbag" the defense by calling Lisa as a rebuttal witness because she was not endorsed as a res gestae witness. Finally, defendant argues that the trial court erred in admitting his wife's testimony. He claims that the trial court improperly ruled that Perry could not testify because she violated a sequestration order and that ruling caused defendant to bargain for Perry's testimony.

We review a trial court's evidentiary rulings for an abuse of discretion while questions of law surrounding the admissibility of evidence are reviewed de novo. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Defendant argues that the trial court was obligated to inform Lisa that she could invoke her spousal privilege and refuse to testify against defendant. MCL 600.2162(2) provides in relevant part that; "[i]n a criminal prosecution, a husband shall not be examined as a witness for or against his wife *without his consent* or a wife for or against her husband *without her consent*. . . ." unless a statutory exception applies (emphasis added). The holder of the privilege is the witness-spouse as opposed to the defendant-spouse, which means a witness-spouse "has the legal right not to be compelled to testify in certain criminal prosecutions against a defendant-spouse. . . ." *People v Szabo*, 303 Mich App 737, 746-747; 846 NW2d 412 (2014). In other words, "the witness-spouse must consent to testify." *Id.* at 747.

We are unaware of any published case law in Michigan addressing whether a trial court must expressly inform a testifying spouse about his or her testimonial privilege before the spouse testifies or whether a non-testifying spouse has standing to challenge the court's failure to do so. The Seventh Circuit Court of Appeals,[5] however, has addressed a similar issue in the context of the federal spousal testimonial privilege, which is essentially the same as Michigan's privilege in that the testifying spouse is the holder of the privilege. See e.g. *Trammel v United States*, 445 US 40, 53; 100 S Ct 906; 63 L Ed 2d 186 (1980). Specifically, in *United States v Brock*, 724 F3d 817, 823 (CA 7, 2013), the defendant's wife testified at a pre-trial detention hearing. Subsequently, during the defendant's criminal trial, the district court determined that the wife waived her testimonial privilege by testifying at the detention hearing. On appeal, the defendant argued that the district court erred in determining that his wife waived her privilege. The Seventh Circuit held that the defendant did not have standing to challenge the district court's finding because he was not the holder of the privilege, explaining, "because the defendant-spouse could not invoke the privilege, he also could not appeal a rejection of the privilege." *Id.* at 823.

The holding in *Brock* aligns with precedent from other jurisdictions. For example, in *Smith v United States*, 947 A 2d 1131, 1135 (DC, 2008), in applying the District of Columbia's

---

[5] "Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues." *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 360 n 5; 597 NW2d 250 (1999).

testimonial privilege, which mirrors the federal privilege, the Court of Appeals for the District of Columbia noted that "it is a 'settled rule' that a defendant ordinarily does not have standing to complain of an erroneous ruling on a witness's claim of privilege." See also *United States v Crockett, Jr.*, 534 F2d 589, 604 (CA 5, 1976) (holding that the defendant husband did not have standing to appeal the trial court's overruling his wife's assertion of her spousal privilege). Moreover, *Brock* aligns with precedent involving waiver of other privileges such as the Fifth Amendment privilege against self-incrimination. See *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 715; 344 NW2d 788 (1984) (noting that "[t]he Fifth Amendment privilege against self-incrimination is a personal privilege and cannot be asserted on behalf of another.") *People v Wood*, 447 Mich 80, 90; 523 NW2d 477 (1994) (noting that a criminal defendant "lacked standing to either claim the privilege against self-incrimination for a witness or to complain about an error on the part of the trial judge in overruling the witness' attempt to assert it") (quotation marks and citations omitted).

In this case, the trial court did not expressly determine that Lisa waived her testimonial privilege before she willingly testified without objection. By allowing her to testify, the trial court implicitly concluded that Lisa did not assert her testimonial privilege. As discussed below, while it would have been ideal had the trial court informed Lisa of her privilege on the record and inquired as to whether she understood and waived her privilege, because defendant could not invoke Lisa's testimonial privilege, he has no standing to appeal the court's determination that Lisa did not assert the privilege. *Brock*, 724 F 3d at 823.

Although defendant does not have standing to raise the issue on appeal, like the Seventh Circuit, we recognize "several consequences of this rule," and note that "[n]othing should stop counsel for the defendant-spouse from raising an objection to the witness-spouse's testimony to ensure that she knows she cannot be required to testify against the defendant-spouse." *Id*. Additionally, "[g]iven the importance of the spousal testimonial privilege, it would . . . be entirely appropriate and often prudent for the [trial] court, even in the absence of an objection, to make sure that the testifying spouse understands that she cannot be required to testify against her spouse, especially if she does not have her own counsel." *Id*. Indeed, in order to give effect to the testimonial privilege enumerated in MCL 600.2162(2), "outside the presence of the jury, the trial judge should tell one who is called to testify for or against his spouse that his testimony cannot be compelled but may be received if volunteered." *Smith*, 947 A2d at 1135 (quotation marks and citations omitted).

Next, defendant appears to argue that the trial court erred when it did not inform Lisa of her Fifth Amendment right against self-incrimination. However, as noted above, defendant lacks standing to assert a Fifth Amendment privilege for a witness, *Paramount Pictures Corp*, 418 Mich at 715; *Wood*, 447 Mich at 90, and his argument therefore fails.[6]

---

[6] We note that in cases involving a potential witness "who is intimately connected with the criminal episode at issue, protective measures must be taken." *People v Poma*, 96 Mich App 726, 732; 294 NW2d 221 (1980). Specifically, our Supreme Court has explained that in these circumstances, "[T]he judge must hold a hearing outside the jury's presence to determine if the

Defendant also contends that the trial court erred in allowing the late endorsement of Lisa as a witness. This Court has held that a trial court did not abuse its discretion by allowing the late endorsement of a prosecution witness when the witness was known to the defense beforehand. *People v Callon*, 256 Mich App 312, 328; 662 NW2d 501 (2003). In this case, defendant knew that Lisa was a potential witness in this case. Police first contacted Lisa at her residence when they were attempting to locate defendant and defendant also subpoenaed her in case her testimony was needed at trial. Thus, we conclude that no unfair prejudice resulted from the late endorsement of Lisa because defendant was already aware of the possibility that she might testify at trial and defendant is not entitled to relief.

Defendant also appears to assert that the prosecutor failed to provide notice that Lisa would be called as a witness in an attempt to "subterfuge" and "sandbag" the defense. To the extent that defendant asserts a claim of prosecutorial misconduct, defendant fails to provide any supporting authority and fails to otherwise develop his argument. The issue is therefore abandoned for our review. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (a defendant may not "merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority"). Nevertheless, having considered the merit of defendant's argument, nothing in the record supports that the prosecutor committed misconduct in this case.

Next, defendant argues that the trial court erred in initially excluding Perry's testimony on grounds that she violated the court's sequestration order.

MRE 615 permits a trial court to sequester witnesses upon the request of a party or sua sponte. Trial courts have discretion when witnesses violate a sequestration order to exclude or permit the offending witness's testimony. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011). Three sanctions are available to a trial court to remedy a witness's violation of a sequestration order: "(1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation marks and citations omitted). However, "courts have routinely held that exclusion of a witness's testimony is an extreme remedy that should be sparingly used." *Id.* Our Michigan Supreme Court has stated that, in cases involving defense violations of sequestration orders, a trial court "may preclude the witnesses involved from testifying if their testimony was tainted by the lack of sequestration." *People v Hayes*, 421 Mich 271, 282; 364 NW2d 635 (1984) (quotations omitted). Because the

witness' [Fifth Amendment] privilege is valid, explaining the privilege to the witness." *People v Gearns*, 457 Mich 170, 202; 577 NW2d 422 (1998), overruled on other grounds, *People v Lukity*, 460 Mich 484, 494; 596 NW2d 607 (1999). In the event that a witness has a valid Fifth Amendment privilege and intends to assert that privilege, the witness must be excused. *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994). In this case, however, the evidence does not support that Lisa was "intimately connected with the criminal episode at issue." Here, police simply located defendant at Lisa's home. Although Lisa initially denied defendant's presence, defendant eventually appeared at the door, and there was no other evidence that showed Lisa was closely associated with defendant's failure to register under SORA.

purpose of MRE 615 is to prevent witnesses from hearing the testimony of each other, the fact that a witness only heard brief opening statements is a significant factor to consider in determining whether the trial court properly excluded the witness's testimony. *Meconi*, 277 Mich App at 653-654.

In this case, the trial court sequestered all witnesses and potential witnesses before trial. The trial court and the attorneys discovered in the middle of defense counsel's opening statement that Perry, a potential defense witness, was in the courtroom. The trial court later stated that it would not allow Perry to testify. The trial court's reasoning to exclude Perry's testimony was twofold: the trial court stated that it was precluding Perry from testifying because of her violation of the sequestration order in addition to defense counsel's failure to provide notice of the witness. The trial court did not abuse its discretion by making this ruling. Although exclusion of a witness's testimony for violating a sequestration order is an extreme remedy, the trial court's decision was not based solely on violation of the order. The trial court also based its decision on defense counsel's failure to provide notice of the witness to the prosecution before trial in violation of the trial court's scheduling order. Accordingly, exclusion of Perry's testimony was a permissible remedy that did not fall outside the realm of reasonable and principled outcomes. *Roberts*, 292 Mich App at 502.

## C. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court erred when it enhanced his sentence under both the general habitual-offender provision in MCL 769.10(1)(a), and SORA, MCL 28.729(1)(b).

The resolution of this issue requires that we interpret the habitual-offender statute and the sentencing enhancement provisions of SORA. We review questions of statutory interpretation de novo. *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). "The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Id*. at 296. When the statutory language is clear and unambiguous, judicial construction is not permitted and we will enforce the statute as written. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

Defendant was convicted under MCL 28.729, which provides in relevant part as follows:

(1) [] [A]n individual required to be registered under this act who willfully violates this act is guilty of a felony punishable as follows:

(a) If the individual has no prior convictions for a violation of this act, by imprisonment for not more than 4 years or a fine of not more than $ 2,000.00, or both.

(b) *If the individual has 1 prior conviction for a violation of this act, by imprisonment for not more than 7 years* or a fine of not more than $ 5,000.00, or both.

-10-

(c) If the individual has 2 or more prior convictions for violations of this act, by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.  [Emphasis added.]

Defendant does not dispute that he had one prior conviction for violating MCL 28.729.  Thus, following his second conviction in this case, pursuant to MCL 28.729(1)(b), notwithstanding fines, defendant was subject to a maximum of 7 years' imprisonment.  However, the trial court applied MCL 769.10 and sentenced defendant to a maximum term of 126 months (10 years' and 6 months).  MCL 769.10 provides as follows:

(1) If a person has been convicted of a felony or an attempt to commit a felony . . . and that person commits a subsequent felony . . . the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court . . . may . . . sentence the person *to imprisonment for a maximum term that is not more than 1-1/2 times the longest term prescribed for a first conviction of that offense* or for a lesser term.

* * *

(3) A conviction shall not be used to enhance a sentence under this section if that conviction is used to enhance a sentence under a statute that prohibits use of the conviction for further enhancement under this section.  [MCL 769.10 (emphasis added).]

The trial court sentenced defendant to a maximum term that was 1-1/2 times the longest term (7 years) proscribed in MCL 28.729(1)(b).  The trial court erred as a matter of law in doing so.  To the extent that a subsequent conviction is punishable upon a first conviction by a term of less than life, such as in this case, the plain language of MCL 769.10(1)(a) directs a sentencing court to sentence the offender to a maximum term "that is not more than 1-1/2 times the longest term proscribed *for a first conviction* of that offense. . ." (emphasis added).  In this case, defendant was convicted of a subsequent offense under MCL 28.729(1).  The longest term proscribed for a first conviction of that offense is a maximum of four years' imprisonment.  MCL 28.729(1)(a).  Thus, under MCL 769.10(1)(a) defendant would be subject to no more than a maximum of six years' imprisonment—(i.e. 1-1/2 times 4 years is 6 years).  The trial court erred in taking 1-1/2 times the maximum prison sentence (7 years) provided under MCL 28.729(1)(b) because (1)(b) sets forth the punishment for a *second* conviction of failure to comply with SORA.  The plain language of MCL 769.10(1)(a) clearly directs a court to enhance a sentence by increasing the longest term proscribed "for a first conviction" of the subsequent offense not a second conviction.  See *Mich Ed Ass'n v Sec of State*, 489 Mich 194, 218; 801 NW2d 35 (2011) ("nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself") (quotation marks and citations omitted).

Although defendant was subject to no more than a six-year maximum prison sentence under MCL 769.10(1)(a), SORA's recidivist provision provides that defendant is subject to not

more than a seven-year maximum prison sentence. Specifically, MCL 28.729(1)(a) through (c) set forth the penalties for failing to comply with SORA. The relevant provision in this case, subsection (1)(b), provides the following penalty: "If the individual has 1 prior conviction for a violation of this act, [the defendant is punishable] by imprisonment for not more than 7 years or a fine of not more than $ 5,000.00, or both." Defendant had one prior conviction of failure to comply with SORA. Therefore, under MCL 28.729(1)(b), he was subject to a maximum prison sentence of not more than seven years. Given that the maximum prison sentence proscribed under MCL 28.729(1)(b) directly conflicts with the maximum prison sentence proscribed under MCL 769.10(1)(a), the statutes irreconcilably conflict. "Where there is a conflict [between sentencing schemes], the specific enhancement statute will prevail to the exclusion of the general one." *People v Brown*, 186 Mich App 350, 356; 463 NW2d 491 (1990). Here, because MCL 28.729(1)(b) is more specific—i.e. it applies specifically to SORA convictions whereas MCL 769.10(1)(a) applies to convictions in general—it is controlling and defendant's maximum prison sentence should not have exceeded seven years.

The prosecution argues that defendant's sentence should be enhanced under MCL 769.10 because there is no language in MCL 28.729 that "prohibits use of" defendant's prior conviction for further enhancement under MCL 769.10. This argument is based on MCL 769.10(3) which provides as follows:

> A conviction shall not be used to enhance a sentence under this section if that conviction is used to enhance a sentence under a statute *that prohibits use of the conviction for further enhancement under this section*. [Emphasis added.]

We agree with the prosecution that there is no language in MCL 28.729 that expressly "prohibits use of" a prior conviction for further enhancement under MCL 769.10(1)(a). However, as previously stated, when two sentencing statutes irreconcilably conflict, we are bound to follow the more specific sentencing statute. *Brown*, 182 Mich App at 356. Thus, because MCL 28.729 is more specific, its sentencing scheme is controlling in this case and MCL 769.10(1)(a) is inapplicable.

Next, defendant contends that the trial court erred in scoring prior record variable (PRV) 7 at 10 points.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

PRV 7 governs a defendant's subsequent or concurrent felony convictions. MCL 777.57. PRV 7 should be scored at 10 points where "the offender has 1 subsequent or concurrent conviction." MCL 777.57(1)(b). In this case, the prosecution concedes in its brief on appeal that defendant was not convicted of multiple felonies or convicted of a subsequent felony. Thus, the trial court erred in scoring PRV 7 at 10 points. And, because the court erred in enhancing defendant's sentence under MCL 769.10, defendant is entitled to resentencing.

The trial court calculated defendant's minimum recommended sentencing range at 5 to 28 months. This amounted to error. MCL 28.729(1) is a Class D offense. MCL 777.11b. Defendant was assessed 10 points for PRV 7 for a total PRV score of 35 points and a PRV Level D; defendant's offense variable (OV) score was 10 for an OV Level II. MCL 777.65. Reducing defendant's total PRV score to 25 points, defendant's PRV score remains at Level D. See MCL 777.65 (a total PRV score of 25-49 points is a PRV Level D). However, because the trial court erred in enhancing defendant's sentence under the general habitual offender provisions,[7] defendant's recommended minimum sentencing range should have been 5 to 23 months, not 5 to 28 months. See MCL 777.65. Accordingly, defendant is entitled to resentencing.[8] *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

For the foregoing reasons, we conclude that defendant's sentence should not have been enhanced under MCL 769.10(1)(a) where that statute directly conflicts with the sentencing enhancement provision contained in MCL 28.729(1)(b). Because, MCL 28.729(1)(b) is more specific, it is controlling and defendant's maximum prison sentence should not have exceeded seven years. Finally, the trial court erred in scoring PRV 7 and in calculating defendant's recommended minimum sentencing range. Remand for resentencing is therefore appropriate.

We affirm defendant's conviction, vacate his sentence, and remand for resentencing consistent with this opinion. Jurisdiction is not retained.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[7] See MCL 777.21(3).

[8] Given our resolution of this issue, we decline to address defendant's argument that trial counsel was deficient for failing to object to the scoring of PRV 7.