# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIE EDDIE ANDERSON II,

Defendant-Appellant.

UNPUBLISHED
October 19, 2017

No. 331466
Jackson Circuit Court
LC No. 14-004531-FC

Before: BOONSTRA, P.J., and METER and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to rob while armed, MCL 750.89; first-degree home invasion, MCL 750.110a(2); two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a weapon with unlawful intent, MCL 750.226; and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 20 to 40 years' imprisonment for the assault with intent to rob while armed and first-degree home invasion convictions, 4 to 7½ years' imprisonment for the felon-in-possession and carrying a weapon with unlawful intent convictions, two to three years' imprisonment for the resisting or obstructing a police officer conviction, and two years' imprisonment for the felony-firearm convictions. Defendant appeals as of right. We affirm.

On Saturday, October 12, 2013, while lying on her bed, Shavonie Baltimore heard a "big boom." She got out of bed and looked out a window. She saw a tan Buick parked in her driveway. Baltimore walked down the stairs and encountered a man she did not know. The man pointed a gun at Baltimore and asked her where she kept her money. When Baltimore said that she did not have any money, the man walked past her towards the back of the house. Baltimore then ran out the front door and to a neighbor's house, where the neighbor called 911.

Jackson Police Department Officer Charles Brant, who responded to the 911 call, sent a radio message asking other law enforcement personnel to be on the lookout for a tan Buick. Jackson County Deputy Jeremy Barnett saw a car that matched the description and gave chase. The Buick stopped at a driveway on Chittock Avenue where a man got out of the passenger door and ran. The driver sped off in the Buick, and Deputy Barnett continued pursuit. The Buick stopped on Maple Avenue. The driver got out and ran with a firearm in tow. Deputy Barnett

-1-

and Jackson Police Officer Bradley Elston eventually apprehended the driver of the vehicle, Josephus Anderson, who was defendant's brother. Deputy Barnett located a rifle within 10 to 15 feet of the location where he and Officer Elston apprehended Josephus.

At trial, Baltimore testified that she was certain defendant was the man she encountered in her house. Josephus testified that he drove defendant to Baltimore's house and that he saw defendant enter the house.[1] At the close of trial, the jury convicted defendant of the above-mentioned crimes.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that he was denied the effective assistance of counsel. Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). A trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's right to the effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's factual findings, including its credibility determinations, for clear error, but review de novo questions of constitutional law. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008). Clear error exists when this Court is left with a definite and firm conviction that the trial court made a mistake. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). If no evidentiary hearing has been held on a claim for ineffective assistance of counsel, then our review of the claim is limited to errors apparent on the record. *Seals*, 285 Mich App at 17.

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). To establish that counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy. *Armstrong*, 490 Mich at 290.

## A. AGENT BRUE'S EXPERT TESTIMONY

Defendant first claims that defense counsel was ineffective for failing to object to ATF Agent Stan Brue's expert testimony that the change of a cell phone calling pattern occurring after the time of the home invasion was very important and could help the police determine the culpability of the user. Agent Brue opined that, based on the change in calling pattern after the

---

[1] Josephus had been convicted of assault with intent to rob while armed, first-degree home invasion, two counts of felony-firearm, and resisting or obstructing a police officer. He received sentences of 51 to 240 months for the assault with intent to rob while armed conviction, 81 to 240 months for the home invasion conviction, two years for the felony-firearm convictions, and 330 days for the resisting or obstructing conviction. Josephus testified pursuant to an agreement in which he would be released from prison after serving only 28 months.

commission of the crime and his training and experience, "the user was certainly involved—possibly involved . . . ." Defendant argues that Agent Brue's testimony was not based on reliable principles or methods and that his counsel's failure to object or request a *Daubert*[2] hearing fell below an objective standard of reasonableness. Although we agree in part with defendant that his trial counsel should have objected to the introduction of Agent Brue's testimony, we conclude that counsel's failure to do so did not prejudice defendant.

Under Michigan evidentiary law, which incorporates the standards from the United States Supreme Court's decision in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), the following standards govern the admissibility of expert testimony:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

The trial court acts as a gatekeeper under MRE 702 to ensure that expert testimony admitted at trial is reliable. *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007). In *Daubert*, 509 US at 593-594, the United States Supreme Court stated that the following factors may aid a trial court when determining whether expert scientific testimony is reliable: (1) whether the theory or technique has been or can be tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) the general acceptance of the theory or technique. The principles articulated in *Daubert* apply to all expert testimony, although lower courts have flexibility to apply the factors depending on the specific context of the case. *Lenawee Co v Wagley*, 301 Mich App 134, 162-163; 836 NW2d 193 (2013). "While *Daubert* hearings are required when dealing with expert scientific opinions in an effort to ensure the reliability of the foundation for the opinion, where non-scientific expert testimony is involved, the *Daubert* factors may be pertinent, or the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 163 (quotation marks, citation, brackets, and emphasis omitted). The *Daubert* factors can be helpful to evaluate even experience-based testimony, however, by inquiring into whether an expert's experience-based methodology has produced erroneous results, whether such a methodology is generally accepted in the relevant community, and whether the expert's preparation is of a kind that others in the field would recognize as acceptable. *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 151; 119 S Ct 1167; 143 L Ed 2d 238 (1999).

At trial, Agent Brue was qualified as an expert in forensic cell phone analysis. He explained that his background included 100 hours of training that "centered on the architecture of cellular networks, the behavior of both cell phones and cell towers within the framework of that architecture, how a phone communicates with a cell tower and vice versa," 40 hours of training

---

[2] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

involving the software used to analyze cell phone records, as well as training pertaining to the behavior of cellular networks in Southeast Michigan. Agent Brue testified, in part, that the cell phone associated with defendant was consistently used on October 12, 2013, with the last call going out at 3:03 p.m., but after the time of the crime, which occurred at approximately 4:52 p.m., all outgoing calls stopped and the phone only received short incoming calls. Agent Brue testified that this change in calling pattern was "very important and c[ould] certainly help us determine the culpability of this user in the—in that home invasion." Agent Brue testified that in the past 4½ years, he had performed 2,600 forensic examinations of cell phone records and had "[a]bsolutely" seen in some of those cases that the "call pattern changes immediately and only after that crime is reported." In Agent Brue's opinion, it was a "tell tale sign" when a phone "[g]oes dark," i.e., "stops being used, stops being activated" by the user. He testified that this change in calling pattern "tells me that the user was certainly involved—possibly involved and that they're doing any number of things after the crime is committed but one is not using the cell phone . . . [and] trying to maybe avoid our ability to track, find, locate that cell phone and thereby them."

We agree with defendant that Agent Brue's testimony analyzing the change in calling pattern, specifically his testimony that the calling pattern in this case was a "tell tale sign" that the user was "certainly involved—possibly involved" in the crime, was not the product of reliable principles or methods. Although Agent Brue testified that he received extensive training in forensic cell phone analysis, his training involved the interaction of cell phones and cell towers to determine the relative location of cell phones, not whether changes in cell phone calling patterns demonstrate a user's participation in a crime. Further, although Agent Brue testified that he had performed 2,600 forensic examinations of cell phone records and had "[a]bsolutely" seen changes in calling patterns in some of those cases after crimes occurred, he offered no methodology for how he determined when or if a change in calling pattern occurred, offered no indication of the amount of calling pattern changes he perceived in the 2,600 forensic examinations of cell phone records he performed, and offered no evidence or studies, compiled by himself or others, suggesting that a change in calling pattern could reliably demonstrate participation in an illegal act by a cell phone user. There is also no indication in the record that Agent Brue reviewed the cell phone records of any persons other than those suspected of crimes, or that he ever attempted to determine the rate of error for his theory. See *People v Kowalski*, 492 Mich 106, 133-135; 821 NW2d 14 (2012) (holding that a circuit court did not abuse its discretion by excluding expert testimony regarding false confessions when the expert formed his opinion on the basis of confessions the expert already believed to be false and then worked backwards to find commonalities, which made it "impossible to test [the expert's] research or compute its rate of error"). Under the circumstances, we are not convinced that Agent Brue's personal experience reviewing cell phone records, standing alone, was sufficient to demonstrate that his opinion was reliable and thus admissible. We therefore agree with defendant that his trial counsel should have objected to this testimony and that counsel's failure to do so fell below an objective standard of reasonableness.

Nonetheless, defendant is not entitled to a new trial because he cannot show with a reasonable probability that his counsel's deficient performance affected the outcome of the trial. See *Uphaus (On Remand)*, 278 Mich App at 185. Baltimore testified at trial that defendant was the man who entered her house, and another eyewitness, Laura Linden, testified that she was 95% sure that defendant was the man she saw in Baltimore's driveway. Josephus testified that

he drove defendant to Baltimore's house and that he saw defendant enter the house. Defendant does not claim that Brue's testimony regarding the use of the cell phone, i.e., that the cell phone was regularly used before 3:03 p.m. and that after 3:03 p.m. and for the rest of the day it only received incoming, short phone calls, was improper. Based on this testimony, even without Agent Brue's testimony that a change in a calling pattern after the crime indicates that the user was involved in the crime, the prosecutor could have argued that the cell phone records, which indicated that defendant actively used the cell phone until 3:03 p.m. and did not use the cell phone around the time the crimes were committed and immediately thereafter, supported that defendant was involved in the crimes. There is no reasonable probability that, but for defense counsel's failure to get Agent Brue's testimony excluded, the result of defendant's trial would have been different.

## B. LINDEN'S IN-COURT IDENTIFICATION

Defendant argues that defense counsel was ineffective for failing to object to Laura Linden's in-court identification of him. According to defendant, based on the eight factors set forth in *People v Gray*, 457 Mich 107, 116; 577 NW2d 92 (1998), Linden's in-court identification was inadmissible. However, these factors are applicable to determine whether an independent basis exists for an in-court identification made after an impermissibly suggestive out-of-court identification. *Id*. at 115. There is no indication on the record that Linden was ever involved in a pretrial identification procedure. Therefore, the *Gray* factors are inapplicable here. Rather, the weight and credibility of the witness's testimony identifying defendant in court was for the trier of fact to assess. *People v Barclay*, 208 Mich App 670, 676; 528 NW2d 842 (1995).

In *United States v Domina*, 784 F2d 1361, 1368 (CA 9, 1986),[3] the Ninth Circuit explained the difference between an initial in-court identification and an in-court identification based on a suggestive pretrial identification:

> The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the jurors are not present to observe the pretrial identification, they are not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the jury during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially.

---

[3] Although not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 360 n 5; 597 NW2d 250 (1999).

> When the initial identification is in court, there are different considerations. The jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification. [Citation omitted.]

The Ninth Circuit acknowledged that "there can be little doubt that the initial in-court identification is suggestive,"[4] but it also stated that defense counsel has the ability to cross-examine the witness and "argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." *Id.* at 1368-1369 (quotation marks and citation omitted). See also *People v Rodriguez*, 134 Ill App 3d 582, 589; 89 Ill Dec 404; 480 NE2d 1147 (1985) (stating that "[w]here a witness first identifies the defendant at trial, defense counsel may test the perceptions, memory and bias of the witness, contemporaneously exposing weaknesses and adding perspective in order to lessen the hazards of undue weight or mistake" and that a "jury is capable of observing and weighing the suggestiveness of an in-court identification"). Accordingly, any objection to Linden's in-court identification would have been meritless. Defense counsel is not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## C. FAILURE TO INVESTIGATE WILSON

Defendant also claims that defense counsel was ineffective for failing to investigate an alleged witness, Eric Wilson. Counsel must investigate, prepare, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). When a defendant claims that trial counsel was ineffective for failing to present a defense, a defendant must show that he made a good-faith effort to avail himself of the right to present the defense. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999).

At an evidentiary hearing, Wilson testified that he lived on Chittock Avenue at the time of the home invasion and that he saw a man jump out of a tan Buick after the car pulled into a driveway. Wilson was certain that the man was not defendant. He believed that the man was a man named Ray Page. Defendant testified that he asked defense counsel to speak with Wilson and to pick up a packet of information from his mother, which included a letter written by Wilson. The trial court did not find defendant's testimony in this regard credible. This credibility determination was not clearly erroneous. Contrary to defendant's testimony, defense counsel testified that defendant never asked him to investigate Wilson or to pick up a packet of information. Additionally, although defendant testified that he learned from Wilson in 2013 that Wilson had seen the car chase, defendant acknowledged that he never told David Clark, who represented defendant for more than eight months before defense counsel represented him, about Wilson and that he waited until more than a year after he was arrested to tell his mother about Wilson. Defendant's mother testified that defendant first told her about Wilson during trial.

---

[4] See also *Perry v New Hampshire*, 565 US 238, 244; 132 S Ct 716; 181 L Ed 2d 694 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do.").

This Court must give due regard to the special opportunity of the trial court to judge the credibility of the witnesses before it. MCR 2.613(C); *Dendel*, 481 Mich at 130. Giving due regard to the trial court's opportunity to judge the credibility of defendant and defense counsel, we are not left with a definite and firm conviction that the trial court made a mistake by finding that defendant was not credible. Based on the trial court's credibility determination, the trial court did not err by rejecting defendant's claim that defense counsel was ineffective for failing to investigate Wilson. By not asking defense counsel to investigate Wilson or to pick up a packet of information from defendant's mother, defendant did not make a good-faith effort to avail himself of Wilson's testimony.

## II. OFFENSE VARIABLES

Defendant next argues that the trial court erred by assessing 10 points for offense variables (OVs) 14 and 19. A trial court's factual findings made when scoring the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the facts, as found by the trial court, are sufficient to satisfy the scoring conditions prescribed by statute is a question of statutory interpretation, which this Court reviews de novo. *Id.*

OV 14 addresses "the offender's role." MCL 777.44(1). A trial court is to assess 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). A trial court must consider the entire criminal transaction when scoring OV 14. MCL 777.44(2)(a). A "multiple offender situation" is "a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350, vacated in part on other grounds 494 Mich 880 (2013). A "leader" is "a guiding or directing head of a group." *Id.* (quotation marks and citation omitted).

Josephus testified that he drove the tan Buick to Baltimore's house while defendant was sitting in the passenger seat. According to Josephus, it had been defendant's idea to go to the house. Before they left their residence on Maple Avenue, defendant took the rifle from Josephus's car and placed it in the tan Buick. Defendant told Josephus to drive him to "this house," which Josephus understood to mean the house where he had previously taken Ray Page to buy marijuana and where Ray had told him and defendant there was money. Josephus assumed that defendant was going to go into the house and take the money. Although Josephus never saw anything in defendant's hands when defendant left or returned to the tan Buick at Baltimore's house, defendant was wearing a coat and the coat was "bulging" because it was concealing something underneath it. Josephus was convicted, in part, of assault with intent to rob while armed, first-degree home invasion, and two counts of felony-firearm. Josephus's testimony supported a finding, by a preponderance of the evidence, that the events on October 12, 2013, consisted of more than one person violating the law while part of a group and that defendant, who had the idea to go to Baltimore's house and asked Josephus to drive him there, was the leader of the group. The trial court's finding that defendant was the leader of a multiple offender situation was not clearly erroneous.

OV 19 addresses a defendant's "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. A trial court is to assess 10 points for OV 19 if the defendant "interfered with or

attempted to interfere with the administration of justice." MCL 777.49(c).[5] The phrase "interfere with or attempted to interfere with the administration of justice" is "broad" and is not limited to those acts that constitute obstruction of justice. *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). Law enforcement officers are an integral component in the administration of justice, and interference with a police officer's duties in the investigation of crime may constitute interference with the administration of justice. *Id.* at 288.

Deputy Barnett testified that, after he began chasing the tan Buick and the tan Buick continued to accelerate, he turned on his police cruiser's lights and siren. Josephus testified that he knew the deputy wanted to speak with him and defendant. Josephus also testified that defendant instructed him to stop the Buick so that defendant could get out of the car. Once Josephus stopped the car in a driveway on Chittock Avenue, defendant jumped out of the car and, after glancing at Deputy Barnett, who was getting out of his police cruiser, ran. Although there was no evidence that Deputy Barnett ordered defendant to stop either before or after defendant started running, because Deputy Barnett gave an effective command for the tan Buick to stop by turning on his cruiser's lights and siren, *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474, vacated in part on other grounds 495 Mich 876 (2013), and because defendant ran from Deputy Barnett after the Buick stopped, we are not left with a definite and firm conviction that the trial court made a mistake by finding that defendant interfered with or attempted to interfere with the administration of justice.

### III. RECANTATION TESTIMONY

Defendant argues that the trial court erred by denying his motion for a new trial on the basis of Josephus's recantation of his trial testimony. At an evidentiary hearing, Josephus testified that he lied at trial and that he committed the robbery with Ray Page. We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.* A trial court's factual findings are reviewed for clear error. *Id.*

In *Cress*, 468 Mich at 692, our Supreme Court stated the following:

For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [Quotation marks and citation omitted.]

Because the parties agreed, and the trial court found, that the first three factors were met, and because neither defendant nor plaintiff presents any argument regarding those factors on appeal,

---

[5] A trial court may use a defendant's conduct that occurred after the sentencing offense was completed to score OV 19. *People v Smith*, 488 Mich 193, 195; 793 NW2d 666 (2010).

we limit our analysis to whether the trial court abused its discretion by concluding that Josephus's recantation testimony does not make a different result probable on retrial.

Recantation testimony is generally regarded as suspect and untrustworthy. *People v Canter*, 197 Mich App 550, 560; 496 NW2d 336 (1992). Nonetheless, one aspect of Josephus's testimony at the evidentiary hearing gave credibility to his recantation testimony. Josephus testified that prison had been "hell on earth" for him. Yet, despite his experience in prison and knowing that his testimony at the evidentiary hearing could send him back to prison, Josephus testified that he perjured himself at defendant's trial. However, we must give due regard to the trial court's opportunity to appraise the credibility of Josephus. *Id.*; see also MCR 2.613(C). The trial court, which heard Josephus testify at trial and at the evidentiary hearing, believed that Josephus told the truth at trial, not at the evidentiary hearing.

Josephus's recantation testimony at the evidentiary hearing contradicted testimony given at trial. Baltimore testified that she had seen Josephus in court when she attended his court proceedings. She was sure that Josephus was not the man who entered her house. Baltimore had no doubt that defendant was the man who entered her house and pointed a gun at her. Additionally, Linden, who was on her porch when the tan Buick arrived at and left Baltimore's house, testified that the man who got out of the passenger seat got back into the passenger seat when he returned to the car. Linden also testified defendant was "[v]ery, very similar" to the man she saw. Furthermore, evidence that the man in the passenger seat jumped out of the tan Buick on Chittock Avenue, which was only one street over from Maple Avenue where defendant lived, supported that defendant was the man in the tan Buick with Josephus.

Defendant argues that Josephus's recantation testimony makes a different result probable on retrial, in part, because the recantation testimony is supported by the paperwork found in the pocket of a coat, which was found in the tan Buick, and by Wilson's testimony. The paperwork indicated that Rashad Page was a defendant in a landlord-tenant judgment. However, nothing in the record indicates that Ray and Rashad are the same person. Indeed, Josephus testified at trial that Ray had a brother named Rashad. Regarding Wilson's testimony, Wilson did not testify at trial.[6] We find persuasive caselaw from other states indicating that a trial court, in determining whether newly discovered evidence entitles a defendant to a new trial, should consider the newly discovered evidence in conjunction with the evidence presented at trial. See *Preston v Florida*, 970 So 2d 789, 798 (Fla, 2007); *Utah v Pinder* 114 P3d 551, 565 (Utah, 2005); *Wisconsin v Avery*, 345 Wis 2d 407, 424-425; 826 NW2d 60 (2013). Accordingly, we will not consider Wilson's testimony when assessing whether Josephus's recantation testimony would make a different result probable on retrial.

The trial court did not abuse its discretion by denying defendant's motion for a new trial on the basis of newly discovered evidence. Considering the trial court's credibility finding, along with evidence from trial that contradicted Josephus's testimony at the evidentiary hearing and supported that defendant was the person who committed the robbery with Josephus, the trial

---

[6] There is no claim by defendant that Wilson's testimony was newly discovered evidence.

court did not abuse its discretion by concluding that Josephus's recantation testimony would not make a different result probable on retrial.

## IV. STANDARD 4 BRIEF

In a Standard 4 brief, defendant argues that he was denied the effective assistance of counsel. Because defendant did not raise these claims in a motion for a new trial, however, our review of his claims is limited to errors apparent on the record. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant first argues that defense counsel was ineffective because counsel informed defendant that the decision of whether defendant would testify belonged to counsel. A defendant has a constitutional right to testify in his own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Counsel must advise a defendant of this right, and the decision whether to testify belongs to the defendant. *Id.* If a defendant expresses a desire to testify at trial, the trial court must grant the request, even if counsel has advised the defendant against testifying. *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). If a defendant decides not to testify or acquiesces in counsel's decision that he not testify, however, then the right to testify is waived. *Id.*

The record is silent regarding any conversations between defense counsel and defendant about defendant testifying. It is unknown what defense counsel told defendant about his right to testify and whether defendant decided not to testify or acquiesced in a decision by defense counsel that he not testify. Defense counsel's statement in closing argument that he had decided that defendant would not testify does not establish that defense counsel told defendant that the decision whether defendant would testify belonged to counsel. Decisions regarding closing argument involve matters of trial strategy, see *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015), and defense counsel may have made the strategic decision to tell the jury that he had decided that defendant would not testify. Accordingly, defendant has failed to establish the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant claims that defense counsel provided ineffective assistance by failing to call two employees of the victim's rights unit and to use their testimony to impeach Baltimore's testimony. Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Based on the prosecutor's statements at a pretrial hearing, the two employees, if called as witnesses at trial, would have testified that they did not remember receiving a phone call from Baltimore. Their testimony, based on the record, would not have been that Baltimore did not call the victim's rights unit in March 2014. Consequently, their testimony would not have established that Baltimore lied when she testified that, after leaving Bob's Takeout in March 2014, she called the victim's rights unit to report that she had seen the person who entered her home. Additionally, during closing arguments, defense counsel argued that the absence of any evidence corroborating Baltimore's testimony that she called the victim's rights unit suggested that Baltimore never made that phone call. Therefore, defendant has failed to overcome the strong presumption that defense counsel's decision not to call the two employees was sound trial strategy.

Defendant claims that defense counsel was ineffective for failing to obtain an expert who was capable of determining his location at the time of the crimes based on the GPS data provided in the Sprint phone records. The testimony of Detective Gary Schuette and Agent Brue indicated that Detective Schuette gave Agent Brue all the phone records that he received from Sprint, and Agent Brue testified that there was no GPS information in the records. Nothing in the record indicates that any expert, upon looking at the Sprint phone records, could have determined defendant's precise location at the time of the crimes. Accordingly, it is not apparent from the record that defense counsel's failure to call an expert capable of determining defendant's location at the time of the crimes using GPS data provided in the phone records fell below an objective standard of reasonableness.

Defendant argues that defense counsel was ineffective for failing to impeach certain testimony of Baltimore and Detective Schuette. Decisions regarding how to question witnesses are presumed to concern matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant claims that Baltimore's testimony that Officer Brant told her that a detective would follow up with her on the Monday after the crime and her testimony that she allowed Officer Brant into her house during the investigation should have been impeached. Defendant also claims that Detective Schuette's testimony that he obtained paperwork from the pocket of a coat placed in evidence should have been impeached because another officer testified that he earlier placed the paperwork in an evidence envelope. This testimony was trivial and not particularly relevant to defendant's guilt. Additionally, the evidence that defendant claims defense counsel should have used to impeach the testimony of Baltimore and Detective Schuette was of little impeachment value. The fact that Detective Schuette did not pick up the case until Tuesday, October 15, 2013, did not mean that Officer Brant did not tell Baltimore that a detective would follow up with her on Monday. Also, Baltimore qualified her testimony that Officer Brant entered her house during the investigation by stating only that she "believe[d]" this was the case, but that she "c[ould]n't recall." Likewise, Detective Schuette qualified his testimony that he placed the paperwork in an evidence envelope by stating that he "believe[d]" the paperwork was still in the coat. Defendant has failed to overcome the strong presumption that defense counsel engaged in sound trial strategy while cross-examining Baltimore and Detective Schuette.

Defendant next argues in his Standard 4 brief that the prosecutor engaged in multiple acts of misconduct. Because defendant did not object to the alleged improper conduct, his claims of prosecutorial error are unpreserved, *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), and we review them for plain error affecting defendant's substantial rights, *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

Defendant claims that the prosecutor improperly vouched for the credibility of Josephus when the prosecutor indicated that Josephus, as part of the deal he received, had to provide truthful testimony. However, a prosecutor's reference to an agreement that requires a witness to give truthful testimony is not improper unless it is used by the prosecutor to suggest that the government has some special knowledge, unknown to the jury, that the witness is testifying truthfully. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). The prosecutor never suggested that the government had special knowledge that Josephus was testifying truthfully. Accordingly, the prosecutor did not commit clear or obvious error when he referenced the requirement in the deal that Josephus provide truthful testimony.

Defendant next claims that the prosecutor improperly bolstered the credibility of Baltimore by asking Detective Schuette whether he had obtained an address for defendant after he spoke with Baltimore and before he submitted a request for an arrest warrant. According to defendant, the prosecutor's questions implied that there was an investigation that yielded information that corroborated Baltimore's testimony. Improper vouching occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but unknown by the jury. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). A prosecutor may ask a witness whether he was able to corroborate information learned during a criminal investigation, but if the prosecutor pursues the line of questioning, the prosecutor must also draw out testimony explaining how the information was corroborated and where it originated. *United States v Francis*, 170 F3d 546, 551 (CA 6, 1999). Detective Schuette testified that, after he spoke with Baltimore and before he submitted a warrant request, he obtained defendant's address at the time of the crimes, which was 1029 Maple Avenue. Nothing in the prosecutor's questions to Detective Schuette or in Detective Schuette's testimony indicated that the detective corroborated any information that he learned from Baltimore. Accordingly, there was no error by the prosecutor, much less error that was clear or obvious.

Defendant also argues that the prosecutor improperly bolstered the credibility of Baltimore when the prosecutor asked Baltimore if she understood that her identification of defendant was "part of the evidence" used to charge defendant. A prosecutor's remarks must be read in context. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003). When read in context, the prosecutor's question to Baltimore whether she understood her identification of defendant was part of the evidence used to charge defendant with "some very serious crimes" was meant to elicit Baltimore's understanding of the gravity of her identification. The prosecutor then went on to question Baltimore regarding how she could be sure that defendant was the man who entered her house. The challenged remark would not lead a reasonable jury to believe that the prosecutor had evidence corroborating Baltimore's identification of defendant that was known only to the government. There was no clear or obvious prosecutorial error.

Defendant further claims that the prosecutor lied and knowingly used false testimony. The lie and false testimony, according to defendant, was that paperwork found in the pocket of the coat belonged to "Rasheed Page." A prosecutor may not knowingly use false testimony to obtain a conviction, and a prosecutor has a duty to correct false evidence. *People v Lester*, 232 Mich App 262, 277; 591 NW2d 267 (2001), overruled in part on other grounds by *People v Chenault*, 495 Mich 142 (2014). The paperwork found in the coat pocket included the name "Rashad Page," but the prosecutor and several witnesses used the name "Rasheed Page" when discussing the paperwork. Nothing in the record indicates that Rasheed and Rashad are two different people, nor is there anything in the record to indicate that the prosecutor knowingly used and induced witnesses to use a wrong name. It is quite possible that the prosecutor and the witnesses were simply mistaken about, or even mispronounced, the name on the paperwork, or that this amounted to an error in transcription. This does not amount to clear or obvious error.

Defendant makes several arguments in his Standard 4 brief regarding the ineffective assistance of counsel claims that were raised in his motion for a new trial. Defendant claims that the trial court abused its discretion by denying his motion for a new trial on the basis of defense counsel's failure to investigate Wilson. However, as already discussed, the trial court properly rejected the claim that defense counsel was ineffective for not investigating Wilson.

Defendant argues that the trial court erred by denying his motion for a new trial on the basis of defense counsel's failure to object to Agent Brue's testimony because the testimony constituted an impermissible opinion on defendant's guilt. "A witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). Agent Brue testified that there was a change in the calling pattern of defendant's cell phone after the crimes occurred and that this change suggested to him that the user was "certainly involved—possibly involved . . . ." Agent Brue's testimony was equivocal and did not amount to an improper opinion that defendant was guilty of the charged crimes, only that he was either "certainly" or "possibly" involved. Stating that a person is possibly "involved" in a crime is not equivalent to opining that a defendant is guilty of a charged crime. Compare *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985) (holding that the prosecutor's question to a defendant, "So you're guilty of the crime?" created an improper inference of guilt), with *Heft*, 299 Mich at 83 (holding that a police officer's statements regarding the steps of his investigation were not improper when the officer did not testify about the defendant's "guilt in general"). Any objection to Agent Brue's testimony on this basis would have been meritless, and defense counsel is not ineffective for failing to make a meritless objection. *Fike*, 228 Mich App at 182.

Defendant argues that the trial court abused its discretion by not granting an evidentiary hearing on his claim that defense counsel was ineffective for failing to object to Linden's in-court identification of him.[7] The facts supporting a claim of ineffective assistance of counsel must either exist in the record or be established at an evidentiary hearing. See *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). An evidentiary hearing is appropriate when a defendant's ineffective assistance of counsel claim depends on facts not of record. *Id.* Defendant did not make an offer of proof regarding any facts that supported his claim that defense counsel was ineffective for failing to object to Linden's in-court identification that needed to be established at an evidentiary hearing. Therefore, the trial court did not abuse its discretion by denying defendant's request for an evidentiary hearing on the claim.

Finally, defendant argues that the cumulative effect of errors denied him a fair trial. The cumulative effect of several errors may warrant reversal even if individual errors would not merit reversal. *Dobek*, 274 Mich App at 106. Only actual errors are aggregated to determine their cumulative effect. *Bahoda*, 448 Mich at 292 n 64. In this case, the only error we perceive arose as the result of defense counsel's failure to object to Agent Brue's testimony on the basis that the testimony was inadmissible under MRE 702. However, as already discussed, defense counsel's failure to object to Agent Brue's testimony did not prejudice defendant. Because defendant has

---

[7] We review a trial court's decision whether to hold an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

not established any other errors, there is no cumulative effect of errors that would warrant granting defendant a new trial.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Michael F. Gadola