# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JUAN ENRIQUE REYES,

       Defendant-Appellant.

UNPUBLISHED
March 13, 2018

No. 332742
Kent Circuit Court
LC No. 15-011596-FC

---

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; assault with intent to commit murder, MCL 750.83; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent sentences of life imprisonment for the murder conviction and 20 to 50 years' imprisonment for the assault conviction which were to be served consecutively to a two-year sentence for the felony-firearm conviction. Defendant appeals by right. We affirm.

Defendant's convictions arise from an encounter in the early morning of September 30, 2007, between the occupants of a gold Cadillac, which defendant's brother, Eric Reyes Santiago, was driving and the people attending a party at Stuart Person's house at 751 Cutler Street in Grand Rapids, Michigan. Defendant testified that after he got out of the Cadillac, he pulled out his gun, fired two shots into the air and told people from the party to get back. But according to defendant, he did not fire the gunshots that hit Jesse McDowell and Douglas Pollok. Defendant testified that his gun was out of bullets after he fired the two warnings shots and that when he was between the Cadillac and the rear driver's side door getting back into the vehicle, Antonio Lopez pointed his gun out the window and fired two shots into the crowd.

On appeal, defendant argues that the exclusion of African-Americans and Hispanics from the jury venire violated his right to be tried by a jury drawn from a fair cross section of the community. To preserve the claim that he was denied the right to be tried by a jury drawn from a fair cross section of the community, a defendant must object to the composition of the jury venire before the jury is empaneled and sworn. *People v Dixon*, 217 Mich App 400, 404; 552

-1-

NW2d 663 (1996). Although defendant mentioned the lack of African-Americans and Hispanics on "the panel" or "the jury" in response to the prosecutor's claim that because defendant only peremptorily excused white males, there was a *Batson*[1] violation, defendant never voiced his own objection claiming that the lack of African-Americans and Hispanics on the jury venire violated his constitutional right to a jury. Accordingly, the claim of error is unpreserved. We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The Sixth Amendment, US Const, Am VI, protects a defendant's right to be tried by an impartial jury drawn from a fair cross section of the community. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must show the following:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion in the group in the jury-selection process." [*Id*. at 581-582, quoting *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

Defendant cannot meet the second prong. Because this Court's review is limited to the record established in the trial court, and a party may not expand the record on appeal, *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002), we cannot consider the statistical data from the United States Census Bureau regarding the population of Kent County in 2015 that defendant has attached to his brief on appeal. Accordingly, there is nothing in the record to establish that the representation of African-Americans and Hispanics on defendant's jury venire was not fair and reasonable in relationship to the number of such persons in the community. Furthermore, to determine whether representation of a distinct group is fair and reasonable, a court must "evaluate the composition of *venires* over a significant time period rather than just the defendant's individual venire." *Bryant*, 491 Mich at 600. There is no record evidence regarding the representation of African-Americans and Hispanics in Kent County jury venires over a significant period of time. Accordingly, defendant has not shown plain error. *Carines*, 460 Mich at 763-764.

Next, defendant argues that the prosecutor used leading questions to change the testimony of two witnesses, Brian Nicholson and Anthony Medlij. Because defendant did not object to the alleged improper questions, the claim of prosecutorial misconduct is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

---

[1] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). We note that defendant belatedly asked for a remand for an evidentiary hearing on this issue and several others. We have declined to grant his motion.

"Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." MRE 611(d)(1). Leading questions are "question[s] that suggest[] the answer to the person being interrogated; esp., a question that may be answered by a mere 'yes' or 'no.'" *Black's Law Dictionary* (10th ed).

The prosecutor's question to Nicholson, "Did he get back in the rear—the driver's, back seat driver side, and did he get back in there?" was not a leading question. Although it could be answered with a "yes" or "no," it did not suggest the answer to the question of which door "he" used to get back into the Cadillac. Moreover, even were the question considered leading it did not affect defendant's substantial rights. *Ackerman*, 257 Mich App at 448. Contrary to defendant's claim, the alleged leading question to which Nicholson answered, "Yes, sir," did not change Nicholson's testimony. After Nicholson testified that an occupant of the Cadillac got out of the rear passenger side door and confronted him, he testified that people from the party started walking toward the Cadillac, which prompted the occupant to get back in the Cadillac. Then, according to Nicholson, "[t]he other door opened up on the other side of the car," and the occupant from the rear driver's side seat confronted the people from the party. Nicholson testified that after two shots were fired in the air and another two shots were fired into the crowd, "[h]e" got back into the car. Thus, when the prosecutor asked Nicholson if "he" got into the rear driver's side seat, the prosecutor was talking about a different occupant of the Cadillac than the one who initially got out of the Cadillac on the passenger side. Under any analysis, the question did not affect the outcome of trial. *Carines*, 460 Mich at 763.

The prosecutor's question, "So, rear driver is where you see the gun?" to Nicholson on redirect examination was also not a leading question. Immediately before the question, Nicholson answered one regarding which side of the Cadillac he saw the gun, and because he only said, "This side," while indicating (probably on a map), the prosecutor's question was simply a clarification of Nicholson's testimony. There was no plain error. *Ackerman*, 257 Mich App at 448.

The prosecutor's question to Medlij, "[R]ear driver's side door, that was the person you saw with the gun; correct?" was a leading question. It suggested the answer to the question of which door the person with the gun used to get out of the Cadillac, but, again, the use of this leading question did not affect defendant's substantial rights. *Id.* Medlij's answer of "Yes" to the question was not inconsistent with his previous testimony that he saw the back passenger door open. Medlij had not specified on which side of the car the back passenger door opened. Moreover, on cross-examination, Medlij reaffirmed his testimony that the occupant with the gun came out of the Cadillac's rear driver's side door. Furthermore, Medlij testified that he only saw one occupant of the Cadillac get out of the vehicle and that he saw this occupant shoot twice in the air. He did not see the shots that were fired into the crowd. This testimony was consistent with defendant's testimony. Defendant testified that he occupied the rear driver's side seat in the Cadillac, that he got out of the Cadillac on Cutler Street, and that he pulled out his gun and fired two shots in the air. Under these circumstances, the prosecutor's leading question did not affect the outcome of trial. *Carines*, 460 Mich at 763.

Defendant argues that he was denied due process because the police and the prosecution failed to preserve and provide the police report regarding the interview of Lopez. Because defendant did not raise this claim of error before the trial court, it is unpreserved for appellate

review. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Grand Rapids Police Detective Thomas Heikkila testified that either Detective Leslie Smith or Detective Brent Robinson interviewed Lopez on December 3, 2007, but he had not seen a report of the interview in the file. Detective Smith, however, testified that Lopez was never found, and he did not speak with Lopez. Detective Robinson, when asked if he spoke with Lopez, replied that he did not recognize the name. Because the testimony of Detective Smith and Detective Robinson conflicted with the testimony of Detective Heikkila indicating that one of them interviewed Lopez on December 3, 2007, the record does not establish that Lopez was interviewed and a police report was written regarding the interview. Accordingly, defendant has failed to provide this Court with a record to verify the factual basis of his argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) (An appellant must furnish "the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated.").

Regardless, "[t]o warrant reversal on a claimed due-process violation involving the failure to preserve evidence, 'a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith.' " *People v Richards*, 315 Mich App 564, 581; 891 NW2d 911 (2016) (citation and emphasis omitted). A "[d]efendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). Bad faith exists when the conduct of the police indicates that the police knew that the evidence could form a basis for exonerating the defendant. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).

According to defendant, because the police had a report for every other interview that was conducted and had even kept news articles regarding the shooting, their failing to preserve the report of Lopez's interview indicates that the report contained exculpatory information. This claim is nothing but speculation. The record contains no information regarding what Lopez said during an interview and what was written in a report of the interview. The record also contains no information regarding why the report of Lopez's interview was not in the police file. Accordingly, there are no facts from which this Court could conclude that the missing report was either exculpatory or that the police acted in bad faith in failing to preserve the report. *Richards*, 315 Mich App at 581. We reject defendant's claim that the failure of the police and the prosecution to preserve and provide the report of Lopez's interview violated defendant's due process rights.[2]

---

[2] We decline defendant's request to remand for an evidentiary hearing on this issue. Defendant does not explain why the issue must initially be decided by the trial court, nor does he assert that development of a factual record is required for appellate consideration of the issue. Defendant also has not submitted an affidavit or proof regarding any facts that would be established at an evidentiary hearing. See MCR 7.211(C)(1)(a).

Defendant next argues that he was denied effective assistance of counsel at trial and at sentencing. Because no evidentiary hearing has been held on defendant's claims of ineffective assistance of counsel, our review of the claims is limited to mistakes apparent on the record. *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009). To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that but for counsel's deficient performance there is a reasonable probability that the result of the proceedings would have been different. *Id*. at 17, 19. To show that counsel's performance fell below objective standards of reasonableness, a defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

Defendant claims that defense counsel was ineffective for failing to consult with him regarding whether to request instructions on voluntary manslaughter and self-defense. But nothing in the record indicates that defense counsel did not discuss the possibility of requesting instructions for voluntary manslaughter and self-defense with defendant.[3] Accordingly, defendant has failed to prove the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Regardless, counsel has a duty to consult with a defendant regarding "important decisions," including questions of overarching defense strategy, but counsel is not required to obtain the defendant's consent for "every tactical decision." *Florida v Nixon*, 543 US 175, 178; 125 S Ct 551; 160 L Ed 2d 565 (2004) (quotation marks and citations omitted). Defendant testified that after Santiago parked the Cadillac on Cutler Street, he fired his gun in the air twice; then his gun was out of bullets. According to defendant, as he was getting back into the Cadillac, Lopez stuck his gun out the rear driver's side window and fired two shots into the crowd. Consistent with defendant's testimony, defense counsel, in his opening statement and closing argument, told the jury that, although defendant fired two warnings shot into the air, it was not defendant who shot Pollok and McDowell. Nothing in the record indicates that defense counsel did not consult with defendant about an overarching defense strategy. *Id*. Furthermore, defendant's testimony, which included a specific denial that he shot Pollok and McDowell, was inconsistent with any claim that he shot them in the heat of passion, see *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009), or that he shot them with the honest and reasonable belief that the use of force was necessary to defend himself, see MCL 780.972(1). Defendant provides no legal authority to suggest that counsel must consult with a defendant regarding whether to request instructions that are inconsistent with the defendant's testimony. Accordingly, we reject defendant's claim that defense counsel performed below objective standards of reasonableness by failing to consult him regarding whether to request instructions for voluntary manslaughter and self-defense.

Additionally, defense counsel was not ineffective for failing to request instructions on voluntary manslaughter and self-defense. Decisions regarding whether to request jury

---

[3] Because defendant's affidavit which is attached to his brief on appeal was never presented to the trial court, we cannot consider it. *Seals*, 285 Mich App at 20-21.

instructions may involve matters of trial strategy. *People v Gonzalez*, 468 Mich 636, 645; 664 NW2d 159 (2003); *People v Sardy*, 216 Mich App 111, 113; 549 NW2d 23 (1996). The instructions for voluntary manslaughter and self-defense state that the defendant committed the charged murder, see M Crim JI 7.15; M Crim JI 16.8; thus, they were inconsistent with defendant's testimony that Lopez, not he, fired the gunshots that hit Pollok and McDowell. We can reasonably presume that when the instructions for voluntary manslaughter and self-defense were inconsistent with defendant's theory and may have even damaged defendant's case inasmuch as they could have provided further suggestion that defendant fired the gunshots that hit Pollok and McDowell, defense counsel's failure to request the instructions was trial strategy. See *Gonzalez*, 468 Mich at 645. Defendant fails to overcome the strong presumption that by not requesting instructions on voluntary manslaughter and self-defense, defense counsel did not engage in sound trial strategy. *Armstrong*, 490 Mich at 290.

We also reject defendant's argument that defense counsel was ineffective for failing to request an instruction on reckless or careless discharge of a firearm causing death or injury. Generally, a defendant is entitled to instructions on necessarily included lesser offenses, but not cognate offenses. *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010). A lesser offense is necessarily included in the greater offense if the elements that are necessary for its commission are subsumed within the elements necessary for the commission of the greater offense. *Id.* A cognate offense contains elements not found in the greater offense. *Id.* A necessary element for the commission of careless or reckless discharge of a firearm causing death or injury is the discharge of a firearm. MCL 752.861. Because the discharge of a firearm is not necessary to commit second-degree murder, see *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007), assault with intent to commit murder, see *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010), or felony-firearm, see *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999), careless or reckless discharge of a firearm causing death or injury is not a necessarily included lesser offense of any charged crime, and defendant was not entitled to an instruction on it. Defense counsel was not ineffective for failing to request an instruction that defendant was not entitled to receive. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) (counsel cannot be faulted for failing to take action that would have been futile or meritless).

Defendant next claims that defense counsel was ineffective for failing to object to the leading questions the prosecutor asked Medlij and Nicholson. As already explained, the prosecutor did not ask a leading question when he asked Medlij if it were correct that the occupant of the Cadillac whom he saw with a gun got out of the rear driver's side door and when he asked Nicholson if the occupant of the Cadillac who shot the gun got back into the Cadillac through the rear driver's side door.[4] However, the testimony that these two questions elicited was consistent with defendant's own testimony that he sat in the rear driver's side seat of the Cadillac, that he got out of the Cadillac on Cutler Street, that he pulled out his gun and fired two warning shots in the air, and that he used the rear driver's side door to get back into the Cadillac.

---

[4] The prosecutor's question to Nicholson on redirect examination if he saw the gun on the rear driver's side was not a leading question. Thus, any objection to the question on that basis would have been futile. See *Fike*, 228 Mich App at 182.

Based on defendant's testimony, defendant has failed to overcome the strong presumption that defense counsel's failure to object to the allegedly leading questions was sound trial strategy. *Armstrong*, 490 Mich at 290.

Defendant also argues that defense counsel was ineffective for failing to object to the scoring of offense variables (OVs) 5, 13, and 19 at sentencing.

OV 5 "is psychological injury to a member of a victim's family," MCL 777.35(1), and must be assigned 15 points if "[s]erious psychological injury requiring professional treatment occurred to a victim's family," MCL 777.35(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2). "[E]ven when professional treatment has not yet been sought or received, points are properly assessed for OV 5 when a victim's family member has suffered a serious psychological injury that may require professional treatment in the future." *People v Calloway* 500 Mich 180, 186; 895 NW2d 165, 169 (2017).

At sentencing, Pollok's mother stated that she cried more times than she could count in the past eight years. When she heard certain songs or sounds, such as a car with a booming base, she had to remember that Pollok was gone. It was a chore for her to get through daily life, and Pollok's death had left a deep emotional hole that could not be filled. Similarly, in a letter to the trial court, Pollok's mother wrote that she often cried for no reason other than missing Pollok and that her sadness went beyond words. Pollok's sister told the trial court that she and Pollok were best friends, and "[l]osing him was like cutting off one of the legs to the four-legged table that was [her] family." In a letter to the trial court, Pollok's father wrote that his emotional pain was beyond his ability to describe. Based on the statements and letters from Pollok's family members, we find there was ample evidence that they suffered psychological injury requiring professional treatment. MCL 777.35(1)(a); *Calloway*, 500 Mich at 187-188. Accordingly, any objection to the scoring of OV 5 would have been meritless. Defense counsel was not ineffective for failing to raise a meritless objection. *Fike*, 228 Mich App at 182.

OV 13 "is continuing pattern of criminal behavior," MCL 777.43(1), and a trial court must assign 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person," MCL 777.43(1)(c). To determine the appropriate number of points for OV 13, a trial court must count "all crimes within a 5-year period, including the sentencing offense," regardless whether the crimes resulted in a conviction. MCL 777.43(2)(a). Additionally, "[e]xcept for offenses related to membership in an organized criminal group or that are gang-related," a trial court is "not [to] score conduct scored in offense variable 11 or 12." MCL 777.43(2)(c).

According to defendant, points cannot be assigned to OV 13 unless there are "separate incidents." This Court, however, rejected such an argument in *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013), holding that "there is nothing in the language of MCL 777.43(1)(c) to support [the defendant's] argument that multiple convictions arising from the same incident cannot be considered for scoring OV 13."

Nonetheless, the trial court improperly assessed 25 points for OV 13. Because conduct used to score OV 12 cannot be used to score OV 13, MCL 777.43(2)(c), a trial court must score OV 12 before it scores OV 13. *People v Bemer*, 286 Mich App 26, 34-35; 777 NW2d 464

(2009). OV 12 pertains to "contemporaneous felonious criminal acts." MCL 777.42(1). "A felonious criminal act is contemporaneous" if "[t]he act occurred within 24 hours of the sentencing offense" and "[t]he act has not and will not result in a separate conviction." MCL 777.42(2)(a)(*i*), (*ii*). Thus, any crimes defendant committed within 24 hours of the sentencing offense that did not result in a conviction—such as defendant's shooting at Angel Delucas near or at the BP gas station—had to be scored under OV 12 rather than OV 13.

Defendant had three convictions that arose from the incident on Cutler Street: second-degree murder, assault with intent to commit murder, and felony-firearm. Only crimes designated as a "crime against a person" can be used to support a 25-point score for OV 13. *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011). While second-degree murder and assault with intent to murder are designated as crimes against a person, MCL 777.16d; MCL 777.16p, felony-firearm is not so designated. Because defendant only had two crimes against a person that could be used to score OV 13, OV 13 could not be scored at 25 points; consequently, defense counsel's failure to object to the scoring of OV 13 fell below objective standards of reasonableness. *Seals*, 285 Mich App at 17, 19.

Nevertheless, defense counsel's deficient performance does not entitle defendant to be resentenced. The sentencing offense with the highest crime class was second-degree murder. MCL 777.16p.[5] A reduction of 25 points in defendant's OV score from 140 points to 115 points does not alter the minimum sentence range. MCL 777.61. Accordingly, there is no reasonable probability that but for defense counsel's deficient performance defendant would have received a different sentence. *Seals*, 285 Mich App 17, 19; see also *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) (stating that a scoring error does not entitle a defendant to be resentenced unless the error alters the guidelines range).

OV 19 assesses points for "interference with the administration of justice or the rendering of emergency services." MCL 777.49. A trial court must assign 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). The phrase "interfere with or attempted to interfere with the administration of justice" is "broad" and is not limited to those acts that constitute the crime of obstruction of justice. *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). Because law enforcement officers are an integral component in the administration of justice, interference with a police officer in the investigation of crime may constitute interference with the administration of justice. *Id.* at 288. In *Barbee*, the Supreme Court held that providing a false name to the police constitutes interference with the administration of justice. *Id.*

---

[5] Because the trial court sentenced defendant for offenses requiring concurrent sentences, it only had to score the guidelines for the conviction of the highest crime class. *People v Mack*, 265 Mich App 122, 127-128; 695 NW2d 342 (2005), citing MCL 771.14(2)(e).

Following the shooting on Cutler Street, defendant fled to Mexico. In Mexico, defendant learned that he was charged with the murder of someone who died on Cutler Street. Within two months of being in Mexico, defendant obtained a fake identification, which he used for eight years. His fake name was on a credit card, his marriage certificate, and his daughter's birth certificate. By fleeing to Mexico and obtaining and using a fake identification, defendant interfered with the administration of justice. His conduct hampered or hindered the administration of justice in respect to the death of Pollok and the assault of McDowell. *Hershey*, 303 Mich App at 343. Accordingly, defense counsel was not ineffective for failing to assert a meritless objection to the scoring of OV 19. *Fike*, 228 Mich App at 182.

We affirm.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause